## CANNON *v.* PRATT.

1. The doctrine in *Stringfellow* v. *Cain* (*supra,* p. 610) reaffirmed.
2. The Probate Court of Utah has jurisdiction to determine the conflicting rights of claimants to lots forming part of the lands in that Territory entered as a town site under the act of Congress of March 2, 1867 (14 Stat. 541), and an appeal may be taken from the judgment of that court to the District Court, within one year after it has been rendered.
3. A judgment will not be reversed for error in excluding testimony which is cumulative only, if it is apparent that if received it would not affect the result.

APPEAL from the Supreme Court of the Territory of Utah. The facts are stated in the opinion of the court.

*Mr. George W. Biddle* and *Mr. J. L. Rawlins* for the appellants.

*Mr. Robert N. Baskin, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This, like *Stringfellow* v. *Cain* (*supra,* p. 610), was a statu-

tory proceeding begun in the Probate Court of Salt Lake County, Utah, to settle disputes between claimants as to their respective rights to a lot in Salt Lake City, purchased by the mayor of the city from the United States, in trust, under the Town-Site Act of March 2, 1867, 14 Stat. 541. As doubts were entertained in respect to the proper manner of bringing it here for review, an appeal was taken and a writ of error sued out. For the reasons stated in that case, the appeal is sustained and the writ of error dismissed.

The controversy arises as to the ownership of the south half of lot 5, block 76, plat A, and the first question to be settled is in respect to the jurisdiction of the District Court on the appeal from the Probate Court. The decision of the Probate Court was given Nov. 28, 1873, and the appeal taken Feb. 3, 1874. The territorial act of 1869, regulating the execution of town-site trusts (Comp. Laws Utah (1876), 381), provides that if either party shall feel aggrieved at the decision of the Probate Court, he may appeal to the District Court "as in other cases." In *Golding* v. *Jennings* (1 Utah, 135), it was decided that there could be no appeal from the Probate Court to the District Court in a civil action, because the Probate Court did not have jurisdiction of such actions. Here the Probate Court had jurisdiction of the suit, and the right of appeal is expressly given. The difficulty is not as to the right of appeal, but as to the time within which the appeal is to be taken. The Civil Practice Act of Utah (Comp. Laws (1876), 492) provides that an appeal may be taken "from a final judgment in an action or special proceedings commenced in the court in which the judgment is rendered, within one year from the rendition of the judgment," and "from a judgment rendered on an appeal from an inferior court, within ninety days after the rendition of the judgment." This, we think, governs the present case. The provision in the territorial act relating to the judiciary, approved Jan. 19, 1855, fixing the time for appeals from the probate to the district courts at thirty days, is in conflict with the Civil Practice Act in this particular, and comes within the repealing clause of the latter act.

Upon the appeal from the Probate Court to the District Court, "all the testimony and written proofs adduced, to-

gether with the statements of the parties and the judgment of the court," were certified up as required by the territorial town-site law. Upon the trial, the District Court decided that the execution of a deed from Orson Pratt to Brigham Young, which was sent up as part of the written proofs below, had not been sufficiently shown. For this reason the deed was excluded as evidence. The District Court also excluded as evidence the answers of Brigham Young, Jr., to two interrogatories which had been propounded to him, and also the answers of Hamilton G. Park to interrogatories propounded to him. The same thing was done in respect to the answers of Brigham Young, Sen., to five interrogatories. The excluded testimony of Brigham Young, Jr., related to the payment of rent for the premises in dispute to him as agent for his father, Brigham Young, Sen., after the claim of Mrs. Pratt, the appellee, had been filed with the clerk of the Probate Court. The testimony of Park related to payment of rent for the lot by one Ellerbach, as agent of Orson Pratt, to him as the agent of Brigham Young, Sen., from the fall of 1867 to the spring of 1869. The testimony of Brigham Young, Sen., related to his purchase of the lot from Orson Pratt in 1861 or 1862, and he also said that he was the owner of the lot with two tenants on it. Objections to all the testimony which was excluded had been taken and entered upon the minutes in the Probate Court.

Upon the trial in the District Court the facts were found, and as a conclusion of law judgment was given in favor of Mrs. Pratt. Brigham Young, Sen., the adverse claimant, moved for a new trial, because the findings were against the evidence. This motion was overruled, and he thereupon appealed to the territorial Supreme Court both from the judgment and the order refusing a new trial. A statement of the case was made on these appeals, which included all the testimony with the exceptions and the entire record of the proceedings in the District Court. The Supreme Court affirmed generally the judgment of the District Court.

As we held in *Stringfellow* v. *Cain*, when the Supreme Court affirms the judgment of the District Court upon findings of fact made by the District Court, the Supreme Court

in effect adopts such findings as its own for the purposes of an appeal to this court. We are therefore to consider the case here upon the facts found by the District Court. These findings show that Sarah M. Pratt, the present claimant and appellee, and Orson Pratt, settled on the lot in controversy about the year 1854. Mrs. Pratt erected a house and fences upon the lot, and the two lived there until 1861, when they went to the southern part of the Territory. After that for several years Brigham Young, Sen., had possession of the lot by his tenants, but in 1867 or early in 1868 he told Mrs. Pratt she might have back the south half, and accordingly she and her family went into possession on the 12th of March, 1868, and have occupied it as their home ever since. Orson Pratt has not lived with his wife, Sarah M. Pratt, since March 12, 1868, and he has five other families, four of which are residents of Salt Lake City. Mrs. Pratt and her children have supported themselves by their labor and means since March 12, 1868, and have put improvements on the lot by repairing the house, fencing, setting out trees, &c. Mrs. Pratt was the head of her family for ten years previous to November, 1873. No rent has been claimed of or paid by her since she went into possession, nor by Orson Pratt or any agent of his since that time. Orson Pratt has not supported his wife, Sarah M. Pratt, or her family since March, 1868, and has contributed but a very small amount for that purpose. The town site was purchased by the mayor, under the provisions of the Congressional Town-Site Act, Nov. 21, 1871. Young filed his declaratory statement in the office of the probate clerk, Jan. 13, 1872, and Mrs. Pratt filed hers April 9, 1872.

Upon this state of facts it is clear that the judgment appealed from was right, unless there was error in the rulings as to the admissibility of evidence. The original occupancy of Orson Pratt and his wife was abandoned in 1861. Brigham Young then entered into possession. It matters not, for the purposes of this inquiry, whether he purchased the possessory rights of Pratt and his wife or not. They voluntarily left the lot and he took it. Then in 1868 he gave back the south half to Mrs Pratt, and she has occupied adversely ever since. Under the rule settled in *Stringfellow* v. *Cain*, this gave her

the right to a conveyance under the trust created by the town-site purchase.

It remains only to consider the several objections to the rulings upon the admissibility of the evidence. From what has been said it is clear that the exclusion of the deed was immaterial. As Pratt and his wife abandoned the possession in 1861, it is of no consequence whether Young occupied after that as their vendee or as an adverse possessor. He was in possession claiming title, and they were out with no apparent purpose of returning. That is all that is necessary to make his right good as against their previous entry.

As to the testimony of Brigham Young, Jr., it related to a payment of rent by Orson Pratt after this proceeding was begun in the Probate Court. Of course that, under the circumstances, could have no effect adverse to Mrs. Pratt's title.

As to the testimony of Brigham Young, Sen., it was clearly immaterial or incompetent. That in respect to his purchase from Pratt was immaterial, because his rights prior to his putting Mrs. Pratt in possession the second time are not disputed. His statement that he owned the property was incompetent. That depended upon the facts, and his statement was no more than an expression of his opinion.

The testimony of Park, so far as it related to the ownership of the property, was also incompetent, as it was in reality only an expression of his opinion. As to the collection of rent from Orson Pratt, he says his collections were made from T. W. Ellerbach, as the agent of Pratt, and in the testimony of Ellerbach the same payments are shown, with the manner of payment and his authority as agent. No possible harm could have resulted from the exclusion of this evidence. A judgment will not be reversed for error in excluding testimony which is cumulative only, if it is apparent that if received it would not affect the result. In this case the rejected evidence was all before the Supreme Court, and was there considered. In the opinion it is in effect said that if the evidence had been admitted in the court below, and if that court had given it all the force which could be reasonably claimed, the result must have been the same. Under these circumstances we must con-

sider the case as coming here from the Supreme Court, with the facts found upon all the evidence.

Upon the whole case we are satisfied with the judgment below.

*Judgment affirmed.*

MR. JUSTICE BRADLEY did not hear the argument in this case or take part in its decision.