## No. 9510.

38  43<br>49  842

THE STATE EX REL. E. BAUMAN ET AL. VS. JUDGE OF CIVIL DISTRICT· COURT FOR THE PARISH OF ORLEANS, DIVISION D.

A mandamus properly lies to compel the city council to provide for the payment of an acknowledged claim against the city. If such mandamus is disobeyed, the judge issuing it can punish for contempt those guilty of the disobedience.

In such case the process for contempt should not be directed against the entire city council but against those only who have refused to obey the writ.

Disobedience to a mandamus, ordering the city council to provide for the payment of a city debt, is shown by those members of the council who, after the debt is budgeted on the· report of the finance committee, vote against an ordinance for its payment.

APPLICATION for Certiorari and Prohibition.

---

*Walter H. Rogers,* City Attorney, for the Relators.

---

The opinion of the Court was delivered by

TODD, J.   On the 5th of June, 1885, Herman Newgass, a creditor of· the city of New Orleans, applied for and obtained a peremptory mandamus against the city council and the members thereof to provide for· the payment of his claim.

Eight members of the council refused to obey the writ.   The claim had been placed on the budget, and the finance committee had reported an ordinance directing its payment, but the eight members above referred to, voted against the ordinance for its payment and by their vote defeated its passage, and at the same time signified their· disobedience of the order requiring provision to be made for its payment.

Thereupon under a rule taken, the members of the council, thus refusing obedience to the mandamus, were adjudged guilty of contempt by the judge who issued the writ, and were each sentenced to pay a fine of fifty dollars and to be imprisoned in the parish jail for ten days.

They complain of this action of the judge, and have applied to this Court for writs of *habeas corpus, certiorari* and *prohibition,* under which they seek to have the sentence set aside and annulled.

It is almost needless to say that the writ of *habeas corpus*—being only authorized in aid of the appellate jurisdiction of this Court—we cannot consider it, and must confine our attention to the other relief sought.

1. The relators first contend that the proceeding for contempt was wholly unauthorized in this case, and that the party aggrieved by the non-action of the relators in the premises, had his remedy under Art. 636 of the Code of Practice, providing in certain cases for the enforcement of judgments by writs of *distringas.*

In our opinion, that article is wholly inapplicable to the matter in hand. It relates to judgments and decrees rendered in the ordinary course of judicial proceedings, and not to peremptory orders issued in summary proceedings requiring or prohibiting the performance of some specific act.

The thing ordered to be done by the relators in this instance, was the performance of a purely ministerial duty imposed upon them by law, that is, to provide for the payment of a just claim against the city, and already placed as such on the budget of city expenditures.

Under the law and the peremptory terms of the mandate addressed to them by a judge clothed with full jurisdiction over the subject, they were vested with no discretion in the matter—their plain duty was to obey the law and the writ.

Courts would indeed be comparatively powerless, and the administration of the law and of justice utterly inefficient and worthless, if judges possessed not the authority to enforce obedience to their legitimate orders by the process and means herein complained of.

2. The second contention of the relators is, that the process for contempt should not have been levelled alone against the members refusing obedience to the mandamus, but directed against the city of New Orleans or all the members of the council.

There is no force in this proposition. Dillon in his able work on Municipal Corporations, 2 vols, p. 876, in discussing the identical subject now before us says: "The writ, although directed to the corpo-

ration, is enforced through the members or officers whose duty it is to obey its commands, and if part of the officers or members have done all within their power to comply with the writ, the court will punish only those who are actually guilty of disobedience;" and this doctrine is placed beyond controversy by the decision of the Supreme Court of the United States in the case of Board Commissioners of Leavenworth vs. Sellew, 99 U. S. 623, 624. This decision is in accord with several others rendered by the State courts. 2 Metcalf, (Ky.) 156; 15 Wis. 37 ; 65 N. C. 114; 19 Wend. (N. Y.) 68; 13 Fla. 451.

It is, therefore, ordered, adjudged and decreed, that the restraining order heretofore rendered be set aside, and the application for the relief herein sought be dismissed at the costs of the relators.

## Concurring Opinion.

FENNER, J. I rest my concurrence in this decree upon the absence of any ground for the exercise of our supervisory jurisdiction.

This is not an appeal, and a proceeding for contempt is not appealable. Mere errors of law or fact afford no ground for the relief sought. We have but three inquiries to make, which are:

1st. Was the order, for the disobedience of which the relators were arraigned, such as the court had the power to make? It is not denied that it was.

2d. Was the order of a kind such as to authorize proceedings for contempt for disobedience thereto? Confessedly it was.

3d. Was the proceeding regular? It is only in cases where the proceedings are absolutely null and void, such as in the examples given in the Code. "When the inferior judge has refused to hear the party or his witnesses, or has pronounced sentence without having cited them to appear," C. P. 857, that our supervisory jurisdiction can be invoked.

Improper joinder or non-joinder of parties, are not defects of the character referred to in the Code. It is sufficient that relators had due notice and hearing and had the opportunity of setting up this and all other legal defenses against the contempt alleged. If the judge has heard and determined such defenses in due course of proceeding, mere error in his decision does not justify our interferance.

Without suggesting that the course of the district judge was not perfectly proper in all respects, I rest my concurrence on the foregoing grounds.

State ex rel. Bauman vs. Judge.

### DISSENTING OPINION.

BERMUDEZ, C. J.   The complaint of the relators is that they were committed for contempt by an incompetent court, without observance of the rule of proceedings in such cases.

It cannot be doubted that the court had jurisdiction to make peremptory the *mandamus* addressed to the council directing the budgetting, etc., of the claim of the complainant, and had authority to enforce obedience to its absolute mandate, in the mode provided by law.

The *mandamus* was directed to the board of councilmen and to the members composing it.  The failure of the members is the failure of the board.  All the members should have met and should have complied with the order of court.  No discretion was left them in the matter.  For such failure, they are, as the component parts of the board, amenable for contempt as the board itself could be and would be, if it were a tangible or natural person.

The mandate not having been complied with by the board, all the members are delinquent and the aggrieved party has no right to judge and determine which of those members are or not guilty of contravening the peremptory command.

The proceeding should be directed, not against certain members singled out, but against each and all, in order that they respectively might show cause why they should not be punished for contempt.

The councilmen who abstained from attendance may be as guilty as those who obstructed obedience, for it was their duty to be present and carry out the instructions of the court.

It is by their appearance on the rule for contempt and their defense, that the guilt or innocence of each and all is to be determined by the court.

If, in the course of the proceedings, it appear that some members have done all in their power to comply with the judicial command, they must be exonerated; but, if on the other hand, it is established that other members whose concurrence was indispensable, have not given it, either by acting in direct opposition or by omitting to act, the penalty attached to disobedience should be visited alike upon all who are recreant, for they were left no alternative.  They are not called upon to determine whether the thing ordered shall or not be done; but they are commanded to do it, unconditionally.

In the present instance, it appears that the concurrence of one more member would have carried out the order of the court.

If the relator in whose favor the *mandamus* was made peremptory, had a right to leave out the members who did not appear at the meet-

ing, he had an equal right to do the same as to seven of the councilmen who were brought to the bar for contempt.

Surely he could do neither without gross and crying injustice.

The proceeding against *all* the members guilty or not, is required by logic and is indispensable in the interest of public order, to prevent reprehensible discrimination.

While under the application for a prohibition, the question of jurisdiction has come up and been decided, under that for a *certiorari*, the proceeding by rule against certain of the members only, is submitted for consideration, that its validity in point of form may be ascertained.

Although the court had jurisdiction to make the *mandamus* peremptory and to enforce obedience to it, it was without authority to proceed against a few; but should have done so against the body represented by all the members, reserving its action to exonerate and to punish according as each member would or not purge himself by his conduct.

### DISSENTING OPINION.

POCHÉ, J.   Eight members of the council of the city of New Orleans, in an application for relief by *certiorari*, complain that they have been illegally held for contempt for having voted "nay" on a contemplated ordinance of the council, the passage of which had been ordered by the court through a peremptory writ of mandamus.   Their complaint embraces two points of alleged error ; one of which is sufficient to entitle them to relief at the hands of this Court.

As the writ of mandamus had been directed to the city of New Orleans and the council thereof, the court was without power or legal authority to direct its process for contempt against eight individuals forming part of a council composed of thirty members.

The fact that eight negative votes were sufficient to defeat the passage of the ordinance shows conclusively that several members of the council were absent; for if all the members had been present and had voted, the result would have showed twenty-two affirmative votes, and the ordinance would thus have been passed, and the relator in the mandamus case would have had no right to complain.   Under that state of the case, the court would have been powerless to proceed against the members who have cast negative votes.   The purpose of its mandate would have been accomplished, and its power over the subject-matter would have been exhausted.

Whence does the judiciary department derive its power to single out a few component parts of a legislative functionary, and to hold them

State ex rel. Bauman vs. Judge.

in contempt for their votes? Conceding the power of courts to punish a board of commissioners or a municipal council for disobedience of the mandates of a competent tribunal, it is plain that the proceeding or mandamus cannot be directed to the persons composing the board or council, but the process must be addressed to the body as a unit. Such was the course pursued in this case in reference to the mandamus. But when the court was met with a disobedience of its mandate, the rule for contempt was not levelled at the disobedient body, the only defendant or respondent in the mandamus proceeding, but was taken against a component or fractional part of the body only. This was manifestly error, and it involved the court in the exercise of a power not conferred by law and not inherent in the court.

This proposition is not met or answered by the argument that the error complained of is at most one of form. It involves a question of right, and puts at issue the assumed power of the court to proceed against individuals for acts of alleged disobedience of a body corporate.

Under a correct proceeding, the absent members might have been found as much in contempt as the members present who had voted in the negative on the contemplated ordinance; and the obedient members of the body, the true and only respondent, could easily have purged themselves of the alleged contempt of the authority of the court.

These views are supported not only by reason and logic, but by most respectable authority. State of Iowa ex rel. Rice vs. Smith, 19 Iowa, Reports, p. 334; Board of County Commissioners of Leavenworth Co. vs. Sellew, U. S. 624.

The absolute illegality of the process for contempt against the relators herein, is further demonstrated by the following consideration : the rule is settled that courts cannot take judicial cognizance of municipal ordinances, which must be alleged and proved in order to be judicially considered or enforced, *a fortiori* courts cannot take judicial notice of the particular votes cast in a council meeting by each individual member of the body. The manner of their voting can only be proved or considered in contradictory proceedings, and not *ex parte*.

Hence the process must of necessity issue against the whole body, as the only mode by which the individual members who have refused obedience to the mandamus, can be reached and properly dealt with.

In this very case the writ was directed against nine members and, on investigation, it was discovered that only eight had cast negative votes.

I therefore dissent from the opinion and decree of the majority.