## DRUMM-FLATO COMMISSION COMPANY *v.* EDMISSON.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 139. Submitted January 27, 1908.—Decided February 24, 1908.

In this case this court finds that the evidence was so far conflicting as to remove the verdict of the jury from reversal by an appellate tribunal.

Under par. 4277, § 399 of the Code of Civil Procedure of Oklahoma of 1893, the original books of entry must be produced on the trial; their production before the notary taking the deposition of the witness who kept the books is not sufficient, and copies made by the notary cannot be used where the objecting party gives notice that the production of the books themselves will be insisted upon.

While there may be a general rule that in actions for tort an allowance for interest is not an absolute right, under par. 2640, § 23 of the Oklahoma Code of 1893, the detriment caused by, and recoverable for, the wrongful

conversion of personal property is the value of the property at the time
of the conversion with interest from that time.

Where the local statute provides, as does par. 4176, § 298 of the Oklahoma
Code of 1893, that on request the court may direct the jury to find upon
particular questions of fact, the verdict will not be set aside because the
jury fails to answer an interrogatory improvidently submitted in regard
to a fact which was only incidental to the issue.

Objections to remarks of the trial court which counsel consider prejudicial
must be taken at the time so that if the court does not then correct what
is misleading its action is subject to review.

87 Pac. Rep. 311, affirmed.

THE facts are stated in the opinion.

*Mr. James S. Botsford*, with whom *Mr. Buckner F. Deatherage*
and *Mr. Odus G. Young* were on the brief, for plaintiff in error.

*Mr. Elijah Robinson* and *Mr. Charles Swindall* for defendant
in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This is an action brought by defendant in error against
plaintiff in error for $8,000, for the conversion of 410 head of
cattle. The case was tried to a jury, which returned a verdict
for the sum of $7,436.06. The jury also returned with the
general verdict answers to special interrogatories which were
submitted at the request of the Commission Company. Judg-
ment was entered upon the verdict, which was affirmed by the
Supreme Court of the Territory of Oklahoma. This writ of
error was then sued out.

The assignments of error assail the sufficiency of the evi-
dence to justify the verdict and judgment and certain rulings
of the trial court.

1. As to the sufficiency of the evidence to justify the ver-
dict, we may say that we agree with the courts below. Upon
the questions of fact presented the evidence was so far con-
flicting as to remove the verdict of the jury and the action of
the lower courts from reversal by an appellate tribunal. The

issue between the parties was clearly defined. Edmisson had become indebted to the Commission Company in large amounts of money, secured by certain notes and chattel mortgages on the cattle which are the subject of the action.

In full satisfaction of the indebtedness the company and he entered into an agreement on November 22, 1899,[1] by which he agreed to deliver to the company 1,900 of the cattle as they run on the range, if that number could be found, of various ages. And it was further agreed that if, after the delivery of that number, Edmisson should gather as many as 200 head he should turn over 100 of them to the company, or if he delivered as many as 2,000 head, "any residue thereafter" was "to be retained by said Edmisson." Edmisson contended that he delivered 1,700 head in compliance with this agreement and was ready and had "rounded up" about 350 head of other cattle and held them for a time ready to deliver to the company. These cattle, after being held for a time, were turned

---

[1] This agreement, made and entered into this 22d day of November, 1899, by and between Drumm-Flato Commission Company, party of the first part, and R. C. Edmisson, party of the second part.

Witnesseth, That said R. C. Edmisson, the second party, hereby agrees to deliver to Drumm-Flato Commission Company nineteen hundred (1,900) head of cattle as they run on the range (provided the same can be found to make this number of head) of various ages, and on which said Drumm-Flato Commission Company hold a chattel mortgage.

The parties of the first part agree, in consideration of the delivery of the above-mentioned number of cattle, to deliver to said second party, R. C. Edmisson, all of his notes, mortgages and other indebtedness due said Drumm-Flato Commission Company to this date.

It is further agreed by the parties mentioned that if Mr. Edmisson gathers as many as 200 head after the delivery to Drumm-Flato Commission Company of said nineteen hundred head of cattle, he is to turn over 100 head of the 200 gathered, or in case said Edmisson delivers to said Drumm-Flato Commission Company as many as two thousand head of cattle, any residue thereafter is to be retained by said Edmisson.

In witness whereof, we have hereunto set our hands the day and year above written.

R. C. EDMISSON,
DRUMM-FLATO COM. CO.,
Per A. DRUMM, P't.

loose in a larger pasture. And Edmisson further contended that the company, by its agents, forcibly took from his ranges and pastures in excess of the number the company was entitled to under the agreement, and for this conversion the action was brought. Edmisson's evidence was addressed to the proof of these contentions.

The counter contentions of the Commission Company were that Edmisson delivered to it only 1,550 head of cattle, and that he refused to deliver any more, and, instead of delivering enough more to comply with his agreement, he scattered them through the various pastures in bunches at distances of forty or fifty miles from his range and it was with difficulty that the company, through its agents, collected 356 head, making in all 1,881 head. In support of these contentions evidence was adduced and the jury rendered the verdict already mentioned.

2. The next assignment of error is that the court erred in rejecting the books of account kept by the Commission Company, showing the number of cattle received and sold by the company. In support of the contention involved in this assignment of error the Commission Company relies on par. 4277 of the statutes of Oklahoma of 1893 and the case of *Kesler* v. *Cheadle*, 12 Oklahoma, 489, and *Drumm-Flato Commission Company* v. *Gerlach Bank*, 81 S. W. Rep. 503.

Par. 4277, § 399, is as follows: "Entries in books of account may be admitted in evidence when it is made to appear by the oath of the person who made the entries, that such entries are correct, and were made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county."

To the contention the Supreme Court of the Territory replied that the entries were not part of the *res gestæ*, that besides the books were not produced, and that neither they nor the original entries were attached to the deposition of the witness, nor were they shown to be lost or destroyed. "We

know of no rule of evidence," the court said, "that would permit a witness to state the entries or the contents of a book of account unless the book were lost or destroyed."

It is, however, contended that the books were before the notary public who took the deposition of the bookkeeper, and that copies of the entries were made by the notary. But when the copies were offered as evidence they were immediately objected to as incompetent and immaterial and not the best evidence. The Commission Company was therefore put upon notice that the production of the books themselves would be insisted on. The notary was not trying the case, and before the court and jury who were trying it the objections to the copies of the entries were renewed. We think that the books should have been produced. They were intended as independent evidence—independent of the witness from whose returns they were made. But if it should be granted their exclusion was error, it is difficult to see how the Commission Company was prejudiced. The persons who received the cattle at the place they were delivered to the company, and the employé of the company who sold them after they were received and from whose report the books were made up, all were permitted to testify. And it may be that the entries in the books were inadmissible for the other reasons given by the Supreme Court. They were not entries of any transaction relating to the cattle between the Commission Company and Edmisson. They were entries of sales made by the Commission Company after the cattle had been delivered to its agent and shipped to it by that agent.

3. Error is assigned upon the instruction of the court that if the jury found a conversion of the property seven per cent interest should be added to its value from the time of its conversion. The contention is that interest can only be given in actions by a creditor against a debtor, and that par. 2615, § 7 of the Oklahoma statutes of 1893 controls. That section reads as follows:

"In an action for the breach of an obligation not arising from

contract, and in every case of oppression, fraud or malice, interest may be given in the discretion of the jury."

The Supreme Court of the Territory rejected the contention, deciding that par. 2640, § 23, governed the case. It provides as follows: "The detriment caused by the wrongful conversion of personal property is presumed to be: First. The value of the property at the time of the conversion, with interest from that time." There was no error in this ruling. It may be that in the absence of statute the general rule is that in actions for tort the allowance of interest is not an absolute right; *Lincoln* v. *Claflin*, 7 Wall. 132; *The Scotland*, 118 U. S. 507; *District of Columbia* v. *Robinson*, 180 U. S. 92; *Frazer* v. *Bigelow Carpet Co.*, 141 Massachusetts, 126; but the Oklahoma statute has made interest a part of the detriment caused by the conversion of personal property. Other States have done the same.

4. The next assignment of error is based upon the refusal of the court to require an answer to interrogatory number 5, as to the number of Edmisson's cattle the agent of the Commission Company shipped from Curtis to Kansas City.

To establish error in the refusal of the court plaintiffs in error cite par. 4176, § 298, of the Civil Code of the Territory, which provides that in all cases the jury shall render a general verdict, and the court shall in any case, at "the request of the parties thereto, or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same."

It certainly cannot be contended that the statute requires every interrogatory to be answered, however remote the fact it inquires about may be from the issue. The Supreme Court of the Territory pointed out that the fact inquired into was only incidental to the issue, and was besides undefined and uncertain as to time. The number of cattle shipped might have some bearing or relation of proof to the number delivered, which was the issue in the case, but under the circumstances and conditions of the other proofs it was within the discretion

of the court to decide whether a specific answer should or should not have been required. Indeed, the interrogatory seems to have been improvidently submitted, for the Supreme Court, in its opinion, says:

"The evidence disclosed that a large number of Edmisson cattle had been shipped to Kansas City, in various shipments. Bryson testifies that the total number of cattle shipped was 2,578. There was no dispute on the part of the plaintiff as to the number of cattle that were shipped. The entire contro- versy was as to the number of cattle that were delivered by the plaintiff to the agent of the defendant, and the number con- verted after allowing the defendant all that it was entitled to under and pursuant to the contract."

5. Plaintiffs in error finally complain as ground of error of certain remarks by the court which, it is contended, were prejudicial. The Supreme Court replied to this assignment of error that no objection had been taken to the remarks com- plained of. Counsel now say that to have made objection would have made "a bad matter much worse." But we can- not accept the excuse. We have examined the remarks com- plained of, and we do not think they had the misleading strength that is attributed to them. At any rate, it was the duty of counsel to object to them, and if then the court made matters worse, or did not correct what was misleading or prejudicial, its action would be subject to review.

*Judgment affirmed.*