**MARTIN et al.**

v.

**HANDY–ANDY COMMUNITY STORES, Inc., OF TEXAS, et al.**

**No. 14798.**

United States Court of Appeals
Fifth Circuit.

June 30, 1954.

Harold D. Putman, Maverick, Putman & Putman, Charles Hancock, San Antonio, Tex., Belli, Ashe & Pinney, Melvin M. Belli, San Francisco, Cal., for appellants.

Carl Wright Johnson, W. B. Jack Ball, C. W. Trueheart, Nat L. Hardy, Hubert W. Green, and Trueheart, McMillin & Russell, San Antonio, Tex., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

On Monday, August 16, 1951, Nancy Martin and her husband, Donald, were awaiting their turn to be checked out at the checking counters in a large grocery store operated by Handy-Andy Commu-

nity Stores, Inc., (herein called Handy-Andy) in San Antonio, Texas. Suddenly, a portion of the plaster ceiling fell upon Mrs. Martin and other customers.

At the time of the occurrence the building occupied by Handy-Andy was leased from its owner, National Bank of Commerce (herein called Bank), which held the property as Trustee under the wills of W. G. and Mary Higgins. Mrs. Martin, through a next friend, and joined by her husband, brought this action against Handy-Andy and the Bank for the injuries allegedly received by her in the accident. The matter was tried before a jury and was submitted on special issues. Plaintiffs have appealed from a judgment rejecting their demands.

Appellants set forth eight grounds of alleged error which may be reduced to two: (1) the trial judge erred in refusing to allow an employee of Handy-Andy to testify as to a remark made by Handy-Andy's store manager the morning after the accident; and (2) the answers of the jury to special issues No. 1, 15 and 16 and the judgment based thereon were contrary to the evidence and denied substantial justice to appellants.

■ A motion to dismiss the appeal was filed, based upon appellants' failure to comply with the time limits set forth in Rule 73 for the filing of the bond, the designation of record and the filing of the record with this Court. Without further discussion, it is sufficient to state that Rule 73, 28 U.S.C.A., leaves the matter of dismissal to the discretion of the appellate court, and this Court has held that it may consider an appeal notwithstanding such failures as those relied upon in the motion. See, for example, Dawson v. McWilliams, 5 Cir., 146 F.2d 38. The motion to dismiss is denied.

The building involved was constructed in 1940 by Higgins. There is testimony in the record to the effect that the general contractor and the designing architects were considered competent and reputable. Trusses of two-by-fours were placed thirty inches apart at the ceiling, to which diagonal bracing was affixed. Stripping was applied across the bottom of these trusses, being one-by-four yellow pine, twelve inches apart; and metal lath was nailed to the stripping. Three coats of plaster were applied to the lath. Six-penny common nails were used to attach the stripping to the trusses, and four-penny commons attached the lath to the stripping. There was conflicting testimony as to whether or not the nails used were adequate according to good construction practice in 1940.

There occurred some minor leaks in the roof during the years, which were repaired by the Bank. A short time before the accident a small hole appeared over the meat department, some thirty-odd feet from the portion of the ceiling which fell; and Handy-Andy obtained a bid for repairing the hole, said to have resulted from a leak in the roof. On Friday evening preceding the accident, an air-conditioning contractor, engaged by Handy-Andy, began the installation of ducts which were attached to the ceiling from below by toggle bolts. No work was done by this contractor on Saturday, but the installation of ducts was substantially completed on Sunday, the day before the accident. Two of the workers on this project testified that they saw a large sag in the ceiling at or near the point from which the plaster and lath later fell. One of them testified that he told the store manager about the sag, but the manager denied any such occurrence. He also denied that a sag was apparent prior to the accident. Various witnesses, including the store manager and some employees of Handy-Andy, testified as to the existence of cracks in the ceiling at or near the wall, variously estimating their size from "hairline" to large enough to allow the entry of a heavy piece of paper. The number was also variously fixed at from three or four to "quite a few".

Expert witnesses testified that San Antonio was in the midst of an unusually hot and dry period at the time of the

accident, and they stated that the heat could have caused the wood to shrink sufficiently to allow the nails holding the lath and stripping to become loose. Another witness concluded that this condition weakened the strength of the ceiling to the point where it could not support the added weight of the air-conditioning ducts attached the day before the accident. But insofar as any of the witnesses knew, no other ceilings in San Antonio fell during this period. Witnesses testified that the ceiling gave way first near the wall and that it did not fall in a general collapse but "peeled down" toward the checking counters. The evidence showed that the first separation probably occurred some twelve feet from the nearest duct, and that about eight feet of the end of the duct fell with the ceiling.

During the trial appellants offered the testimony of one of Handy-Andy's employees who would have testified that on the morning after the accident she heard the store manager say, "I told them that it was going to fall." Counsel for appellants told the judge that the testimony was offered on the question of "notice". It was excluded upon appellees' objection that such evidence of a statement made after the accident was not admissible and could not be binding upon the appellees.

■ Appellants cite only two cases,[1] neither of which passed upon the precise question here involved. The appellees contend that the offered statement was hearsay which was not a part of the res gestae and constituted an inadmissible conclusion on the part of the manager, citing cases. We do not consider it necessary to pass upon the admissibility vel non of the testimony for the reason that we are of the opinion its exclusion,

even if error, was harmless. It was offered solely on the question of whether or not Handy-Andy's manager knew prior to the accident that the ceiling was unsafe. There was in the record testimony of several witnesses to the effect that they had told the manager of conditions which they considered unusual or unsafe, and the manager himself testified he knew of the existence of cracks in the ceiling. We think there was ample evidence in the record from which the jury could have found notice on the part of the manager, if it had chosen to find that evidence decisive. Accordingly, we think that the excluded testimony was cumulative and would not have been determinative on the question of notice. In addition, we note that the jury did not pass upon the question of notice as such under the special issues presented, as will be discussed hereinafter.[2]

In presenting the case to the jury, the Court submitted special issues in writing, containing instructions as to the meaning of the legal terms used, and providing alternative answers for the jury. Special Issue No. 1 asked if the jury found from a preponderance of the evidence that the ceiling was not in a reasonably safe condition at the time of the accident, to which the jury answered, "It was in a reasonably safe condition." Special Issues No. 2–13 dealt with knowledge, notice and negligence on the part of appellees or their agents and with proximate cause; and the jury did not answer any of them. Special Issue No. 14 asked what amount of money the jury thought would compensate Mrs. Martin for her damages, and the jury answered, "$20,000.00."

Special Issues Nos. 15 and 16 asked the jury whether or not the falling of the ceiling was the result of an unavoidable

1. Butt Grocery Co. v. Johnson, Tex.Civ. App., 226 S.W.2d 501; Fenner v. American Surety Co., Tex.Civ.App., 97 S.W. 2d 741; affirmed 133 Tex. 37, 125 S.W. 2d 258.

2. See Tennessee Electric Power Co. v. T.V.A., 306 U.S. 118, 146; Drumm-Flato

Commission Co. v. Edmisson, 208 U.S. 534, 538, 28 S.Ct. 367, 52 L.Ed. 606; Cannon v. Pratt, 99 U.S. 619, 623, 25 L.Ed. 446; Gill v. Mesta Mach. Co., 3 Cir., 165 F.2d 785; Metropolitan Life Ins. Co. v. Madden, 5 Cir., 117 F.2d 446; Winters v. Childress, 5 Cir., 183 F. 577.

accident. The accompanying instructions defined "unavoidable accident" as "an accident that occurs suddenly and unexpectedly without negligence" on the part of Mrs. Martin or either of the appellees "which proximately contributed thereto." To each of these issues the jury answered, "It was an unavoidable accident."

Appellants argue that a reasonably safe ceiling could not fall, and that the mere fact this ceiling fell indicates that the jury's answer to Special Issue No. 1 was based upon prejudice rather than the evidence. Further, they contend that the "unavoidable accident" theorem presented to the jury in Special Issues Nos. 15 and 16 was not warranted under the evidence and that the jury's answers completely ignore the evidence.

While the wording of the instructions and the special issues may lack clarity in some respects, the manner in which the jury treated them and the consistency of the answers indicate the jurors understood the issues of fact presented for their solution.

■ The bare summary of facts stated herein shows there was ample evidence from which the jury could reasonably conclude that there were no apparent manifestations of danger in the condition of the ceiling prior to the accident, or that the accident resulted from some cause other than the negligence of either of the appellees. The burden of proof was on the appellants, and they cannot now complain if the evidence supporting their position failed to convince the jury.

It must also be observed that the record is completely devoid of objection by appellants either to the procedure employed or to the content of the instructions and special issues presented to the jury, as required by Rule 51 of Civil Procedure. There being no reversible error, the judgment of the trial court is

Affirmed.