Francis Curnan, Respondent, *v.* The Delaware and Otsego Railroad Company, Appellant.

The parties entered into a contract, by which plaintiff agreed to construct a railroad for defendant, the latter to pay in monthly installments for work done as the work progressed, on certificate of the engineer, at the rates specified, less ten per cent thereof, which was to be reserved until the final completion and acceptance of the work. Plaintiff agreed to make no claim for damages or extra compensation for any hindrance or delay, or in case the work for any reason should be suspended. Defendant reserved the right to dissolve the contract at any time and plaintiff agreed to discontinue the work, upon five days' written notice to discontinue from defendant, the power to dissolve to be exercised only by defendant upon such notice, and the payment of all sums due for labor performed, and of the $3,000 agreed upon as liquidated damages; the same to be in full for all work, material and damages. In an action upon the contract it appeared that the work was suspended by defendant in March, 1890. Plaintiff was requested to keep his men and teams upon

the work so as to be ready to resume when required, and he so kept them until notified not to do so longer ; plaintiff repeatedly applied for permission to resume work, and in September of that year applied for payment of the amount due him. *Held*, that plaintiff was entitled to recover the amount unpaid for work and materials, including the ten per cent reserved, also the expenses incurred in keeping men and teams in readiness; but was not entitled to recover the $3,000 liquidated damages.

(Argued May 4, 1893; decided June 6, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 8, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Circuit without a jury.

This was an action upon a contract.

This appeal is from a judgment of the General Term in the second department, affirming a judgment rendered on the decision of the trial judge awarding damages to the plaintiff in the sum of $20,406.89, against the defendant.

The parties entered into a contract, dated June 30, 1887, for the construction by the plaintiff for the defendant of the roadbed of the defendant's proposed road, about twenty-five miles in length, in the county of Delaware in this state, for which payment was to be made to the plaintiff at prices fixed for the several kinds of work, according to the amount. The contract required that the work should be commenced within ten days after its date, and that it should be completed within one year and six months. The company agreed to pay the contractor monthly, on or about the 15th day of each month, for all work done and materials furnished by him up to and including the last day of the preceding month, on the certificate of the chief engineer, at the rates specified in the contract, " less ten *per centum* of such amount," to be withheld until the final completion and acceptance of the work, at which time the sum retained, together with the balance due on the final estimate, was to be paid by the company to the contractor on the certificate of the chief engineer " that the whole

work provided for in this contract is completed and accept-
ably finished within the time specified." By the eighth article
of the contract it was provided that the contractor should
make no claim for damages from hindrance or delay from any
cause, in the progress in any portion of the work or in
case the work for any reason should be suspended or delayed,
"and that in no event shall the contractor claim or have a
right to extra compensation for damage arising from any sus-
pension or delay in the prosecution of the work," but his time
for the performance of the contract was extended in case he
was delayed by the acts or omission of the company, "or on
account of failure to secure right of way, or for any other
reasons," for a time equal to the hindrance or delay on the
prosecution of the work so occasioned.

The 14th article is as follows :

"*Fourteenth.* It is further mutually agreed by and between
all the parties hereto, that the party of the first part reserves
the right to dissolve this contract at any time ; and the party
of the second part hereby agrees to discontinue all work pro-
vided to be performed by the party of the second part, for
the party of the first part by this agreement upon five days
notice by the party of the first part, in writing to the party of
the second part, notifying the party of the second part to dis-
continue all work provided by said contract : It is however
further provided and agreed by and between the party of the
first part and second part hereto, that the power to dissolve
this agreement, can only be exercised by the party of the first
part, upon the notice aforesaid ; and the payment of all sums
due the party of the second part for all labor performed for
the party of the first part; and the payment of the further
sum of three thousand dollars hereby agreed upon to be paid
to the party of the second part as liquidated damages which
payment shall be in full for labor performed, for all material
furnished, and damages that the party of the second part may
sustain by the non-performance and completion of the work
provided for in and by the above agreement, and the offer or
tender of the sums above mentioned by the party of the first

part to the party of the second part shall be accepted by him in full for all claims, charges, demands he may have against the party of the first part for any cause whatever, because of the above contract, or and the dissolution of the same and shall be a bar to any action brought or attempted to be brought by the party of the second part, his heirs or assigns against the party of the first part or its assigns."

The defendant was organized as a general railroad corporation, and its stock consisted of 3,551 shares of $100 each, of which one Thomas Cornell held about 3,400. He was the promoter of the road and the defendant requested a finding " that Thomas Cornell was building the roadbed of the defendant through the agency of this company," which finding was made by the trial judge. The enterprise of building the road was his, and he was substantially the principal in the transaction. He furnished the means for building the road, and whatever gains might accrue from the enterprise would inure almost wholly to his benefit, or in case of loss it would fall upon him. Cornell was president of the defendant and one Dimmick (who was the confidential clerk and agent of Cornell) was its secretary, treasurer and also a director of the company. The contract was executed in behalf of the company by the president and secretary. The plaintiff, within a few days after the execution of the contract, entered upon its performance and diligently prosecuted the work until Nov., 1887, when by direction of the defendant the work was suspended, and the plaintiff was not permitted to resume the work until Nov., 1888, although he desired and kept himself in readiness to proceed. The work done and materials furnished up to the suspension of the work in Nov., 1888, had been certified by the chief engineer of the company. In Nov., 1888, the defendant directed the plaintiff to resume work, which he did, and continued its prosecution until March 31, 1890, when he received the following letter :

"RONDOUT, N. Y., *March* 31, 1890.
" FRANCIS CURNAN, Esq.:

" MY DEAR SIR.— The death of Mr. Cornell has left the executive office of the Delaware & Otsego Railroad Co. vacant.

The Vice-President resides in New York city and it is desired
by Mr. Edwin Young the executor of Mr. Cornell's estate that
you suspend your work until he can officially take action, at
which time you will be duly informed, and he hopes that no
serious delay will occur.

> " Very truly yours,
> " SAMUEL G. DIMMICK,
> " *Sec. D. & O. R. R. Co.*"

Mr. Cornell died March 30, 1890, the day before the letter
was written.

The plaintiff immediately after receiving the letter called on
Dimmick at the office of the company at Rondout and there met
Mr. Young, the executor of Mr. Cornell's estate, and there the
direction to suspend work was substantially repeated, and he
was informed that the suspension would probably be for about
four months, and, as the plaintiff testifies, he was requested by
Dimmick and Young to keep his teams upon the work so as
to be ready to resume when required. The plaintiff sus-
pended the work and kept his teams and men to take care of
them employed for several months, until July, when he was
directed, as he testifies, by Dimmick and Young to keep them
no longer awaiting the resumption of the work, and he then
took them away. The plaintiff repeatedly applied to Dim-
mick for permission to resume work, but was put off, and he
was informed by Mr. Young that it was impossible for him to
say what would be done with the road, and that " the whole
question would ultimately turn upon whether or not the Ulster
and Delaware railroad would take the road and conclude to
finish it, and what their action would be I told him I could
not state."

In September, 1890, the plaintiff made application to the
vice-president of the defendant in New York for payment of
amount due him, and that officer informed him that he knew
nothing about the matter, and that he had never met with the
board of directors since its first organization. Similar demand
was made of Dimmick. The work on the road has never been

resumed. When the work was stopped, on the death of
Mr. Cornell, there was a few hundred dollars only in the com-
pany's treasury, and the company had no means then or after-
wards with which to carry on the work. It would have
required an expenditure of about $10,000 to complete plain-
tiff's contract.

This action was commenced in October, 1890. The plain-
tiff was allowed to recover (1) the sum unpaid for work and
materials furnished, including the ten per cent reserved;
(2) the expenses incurred by him between March 31, 1890,
and July in the same year, in keeping men and teams in
readiness to proceed with the work pursuant to the request of
Dimmick; (3) the sum of $3,000, liquidated damages men-
tioned in the 14th article of the contract.

Other facts are stated in the opinion.

*G. D. B. Hasbrouck* for appellant. Defendant ordered no
suspension. Dimmick, as secretary, neither had the power
nor professed to do it. The burden was upon Curnan to show
that the defendant ordered the suspension, and that Dimmick
had the authority, as secretary, to order it. ( *Wilson* v. *N. C.
E. R. R. Co.*, 114 N. Y. 487; *Adriance* v. *Roome*, 52 Barb.
399 ; *Alexander* v. *Caldwell*, 83 N. Y. 480; *Woodruff* v. *R.
R. R. Co.*, 108 id. 39; *Johnson* v. *U. S. & S. Co.*, 37 N. Y.
S. R. 876; *Jourdan* v. *L. I. R. R. Co.*, 115 N. Y. 384;
*Jemison* v. *C. S. Bank*, 122 id. 135 ; *Martin* v. *N. F. P. M.
Co.*, Id. 175.) If, for the purposes of the argument, we
assume that there was a suspension of the work under the
contract, it was what the contract provided for and does
not furnish plaintiff with claim for injury. (*Chapman* v.
*Beach*, 4 Bing. [N. C.] 187; *Sullivan* v. *N. Y. & R.
C. Co.*, 119 N. Y. 348; *Gibson* v. *Doey*, 2 H. & N. 615;
*Clayton* v. *Wardell*, 4 N. Y. 230 ; Lawson on Pres. Ev. 81.)
The contract was not dissolved by the defendant; on the con-
trary, up to the time of the bringing of this suit, the defend-
ant had literally and actually performed the same, and it was
the plaintiff who had failed to perform by stopping when he

did.  (*Pechner* v. *P. Ins. Co.*, 65 N. Y. 207; *Wilson* v. *City of Charlotte*, 110 N. C. 330; Add. on Cont. 1161; *Main* v. *King*, 10 Barb. 59; *Richards* v. *Edick*, 67 id. 266; *Williams* v. *Vance*, 30 Am. Rep. 28; *Corteal* v. *Talmage*, 9 N. Y. 551; *Bagley* v. *Peddie*, 16 id. 469; *Colwell* v. *Lawrence*, 38 id. 71; *Noyes* v. *Phillips*, 60 id. 408.)  The court erred in finding that the defendant is indebted to the plaintiff for use of teams and property kept idle from April 1, to July 22, 1890, and the wages of men from April first to eleventh inclusive.  (*Wilson* v. *K. C. E. R. R. Co.*, 24 N. Y. S. R. 81; 111 N. Y. 187; *Adriance* v. *Roome*, 52 Barb. 399; *Alexander* v. *Caldwell*, 83 N. Y. 480; *Woodruff* v. *R. R. R. Co.*, 108 id. 39; *Davidson* v. *W. E. L. Co.*, 99 id. 566; *Vanderbilt* v. *Schuyler*, 91 id. 382, 401; *Bartlett* v. *Wyman*, 14 Johns. 260; *Crosby* v. *Wood*, 6 N. Y. 369.)  The theory of the defendant all through the trial was that Dimmick had no right to set aside its contracts, nor to make contracts for it, and before conversations or communications had with him were admissible to establish the liability of the company, the burden was upon the plaintiff, to show his authority, to show that his duties were something other than to communicate the messages of Cornell, or the desires of his executor, Mr. Young.  (*Hay* v. *State*, 21 N. Y. Supp. 364; *Johnson* v. *U. L. H. Co.*, 37 N. Y. S. R. 879; *Jourdan* v. *L. I. R. R. Co.*, 115 N. Y. 384; *Jennison* v. *C. S. Bank*, 122 id. 135.)

*P. Cantine* for respondent.  The respondent was entitled to $3,000 liquidated damages provided to be paid in the contract and adjudged by the trial court to be paid to the respondent.  (*Kemp* v. *K. T. Co.*, 69 N. Y. 58; *Corteal* v. *Talmadge*, 9 N. Y. 551; *Williams* v. *Davie*, 21 Wend. 201; *Ward* v. *H. R. B. Co.*, 125 N. Y. 230; 3 Pars. on Cont. [6th ed.] 170–176; *Little* v. *Banks*, 85 N. Y. 265; *Russell* v. *Allerton*, 108 id. 288.)  Where one party to a contract fails to perform what he is required to do by the contract, the other party can rescind, and maintain an action to recover his rights and damages under it.  (*Flaherty* v. *Miner*, 123 N. Y. 382; *Canda*

v. *Wick*, 100 id. 127; *Sullivan* v. *N. Y. & R. C. Co.*, 119 id. 343.) The appellant claimed on the trial on the motion for a nonsuit and exceptions to findings of the court and refusals to find, that the respondent had never obtained a certificate from the company's engineer that all the work provided for under the contract had been performed, and until such certificate was obtained the respondent could not maintain the action. This is untenable. (*Kingsley* v. *City of Brooklyn*, 78 N. Y. 200; *Smith* v. *Alker*, 102 id. 87.) There was nothing upon which to base a submission to the engineer for arbitration and award. (*Hurst* v. *Litchfield*, 39 N. Y. 377; *D. & H. Co.* v. *P. C. Co.*, 50 id. 266; *Seward* v. *City of Rochester*, 109 id. 164; *Hart* v. *Lawman*, 29 Barb. 411; *Smith* v. *Alker*, 102 N. Y. 85; *Haggart* v. *Morgan*, 5 id. 422.)

ANDREWS, Ch. J. The finding that the work was suspended in March, 1890, by direction of the defendant, is supported by evidence. The letter of March 31, 1890, addressed by Dimmick, secretary of the company, in his official character to the plaintiff, was justly interpreted by the trial judge as containing a request by the defendant to suspend work under the contract. It is true that the letter states that " it is desired by Mr. Edwin Young, the executor of Mr. Cornell," that the work shall be suspended. But the relations between the Cornell estate and the defendant were of such a character that the work could only be prosecuted with the consent and co-operation of the former. Cornell in his lifetime was the promoter of the enterprise of building the road, and the only source from which funds could be obtained for continuing the work. He owned nearly the whole stock, and seems to have been vested with the exclusive management of the affairs of the corporation. The board of directors do not appear to have had any meetings, but all its powers were exercised by Mr. Cornell and the secretary, Dimmick.

In view of the circumstances, when the secretary informed the plaintiff of the wish of the representative of the Cornell estate that the work should be suspended, which was confirmed

at the subsequent interviews between the plaintiff and Dimmick and Young, he had a right to regard the letter as a notification by the company to suspend the work. There were no funds in the treasury. The work could not go on unless the means should be furnished out of Cornell's estate. The executor was not ready to act. Both the plaintiff and Dimmick, the secretary, understood the situation, and when the plaintiff was informed by the secretary of the company that the executor desired that the work should be suspended, he had a right to understand that this was also the wish of the company. The actual authority conferred by the corporation upon Dimmick does not appear. But his authority may be implied from the power he had been accustomed to exercise without dissent of the company, and presumably with its acquiescence. He was a director of the company and its secretary and treasurer. He was the person through whom the directions of the company to the plaintiff were communicated, and the plaintiff was justified in regarding directions given by him in his official character respecting the prosecution or suspension of the work under the contract as authorized by the company. That the company was an actor in suspending the work and that the letter of March 31, 1890, was intended as a direction by the company to the plaintiff to suspend the work, is also a reasonable inference from other facts. The company treated the work as suspended. It made no request upon the plaintiff to proceed. On the contrary, he was unable to get the consent of the company to resume the work, although he made repeated applications for this purpose to the secretary at the company's office, and upon application to the vice-president that officer disclaimed any knowledge of the affairs of the company. The chief engineer of the defendant in charge of the work testified that on March 31, 1890, he received orders to stop the work from Mr. Dimmick, the secretary, and that he was the official through whom he was accustomed to receive the orders of the company, and thereupon he discontinued engineering work which was necessary to be done before the plaintiff could proceed.

The right reserved to the company in the 8th article of the contract, to suspend or delay the work, is to be reasonably construed. It could not abandon the enterprise or delay it for an indefinite and unreasonable time, and still refuse to pay the plaintiff the ten *per cent* withheld, on the ground that by the contract that amount was to be retained until the completion and acceptance of the work. When the action was commenced the ability of the company to further prosecute the work was upon the evidence contingent upon the action of third parties. The company refused to give the plaintiff any assurance that the work would ever be resumed. The last suspension had already continued six months. Under these circumstances we think the 8th article was not available to the defendant as a defense when called upon for payment of the sum retained, which represented an indebtedness for work done and materials furnished under the contract.

The trial judge awarded to the plaintiff in addition to the ten *per cent* withheld under the contract, the sum of $2,000 for the value of the use of teams and property which the plaintiff kept unemployed upon the line of the road from March 31, 1890, to July 22, 1890, and for the wages of men for a period of about ten days from April 1, 1890. There was evidence tending to show that Dimmick, the secretary, on suspending the work March 31, 1890, and Young, the executor of Cornell, requested the plaintiff to keep the men and teams upon the line of the road in readiness for the resumption of the work, and that at their request the men were discharged on the 11th of April, and the teams on the 22nd of July. Under the circumstances an implied contract arose on the part of the defendant to compensate the plaintiff for his loss in foregoing the use of his teams and property during this period and for his expenses in retaining the men, provided the arrangement was one which Dimmick was authorized to make in behalf of the company. We think the arrangement was within the incidental powers possessed by Dimmick as the representative of the company in directing a suspension of the work. When the suspension was directed it seems to have been supposed by

all the parties that it would continue for a short time only, and it may well have been regarded that any delay in resuming the work when its resumption was decided upon, would be to the detriment of the company.

We are unable, however, to concur with the courts below in the award of the sum of $3,000 liquidated damages under the provisions of the 12th article. By that article the right was reserved to the company to terminate and end the contract at any time by formal notice in writing of its election so to do, and upon payment to the contractor for all labor performed and of the further sum of $3,000 as liquidated damages, " which payment," the contract declares, " shall be in full for all labor performed and materials furnished, and damages that the party of the second part may sustain by the non-performance and completion of the work provided for in and by the above agreement." The provision as to liquidated damages applies only in case the contract should be terminated by the election of the company before the work was completed, which election was to be signified by written notice to the plaintiff, and notice alone would be ineffectual to dissolve the contract, unless the payments, including the sum paid for liquidated damages, should be made. The liquidated damages were not fixed for a breach of the contract. The dissolution of the contract, under the terms of the 14th article, would in no sense constitute a breach, but would be a power reserved in the contract itself. The company never exercised the power conferred by the article. It never terminated the contract. The contract was binding upon the company at all times up to the commencement of this action. By its refusal to permit the plaintiff to proceed with the work, and its unreasonable delay, it had subjected itself to liability to pay the plaintiff in full for the work done and materials furnished by him under the contract, and could no longer insist on retaining the ten per centum under the provisions of the contract. By its own acts, the company had forfeited the right longer to withhold payment. Any damages which the plaintiff sustained by the unreasonable delay of the company and

its practical abandonment of the enterprise, the plaintiff was entitled to recover as upon a breach of the contract by the defendant. But the provision for liquidated damages had no application to this situation, and it cannot be extended beyond its obvious scope and purpose.

For the reasons indicated, we think the judgment, so far as it embraces the allowance for liquidated damages, is erroneous.

The judgment should, therefore, be modified by striking out the sum awarded as liquidated damages and, as so modified, affirmed, without costs in this court to either party.

All concur.

Judgment accordingly.