JOHN J. TUNISON v. THE DETROIT & LAKE SUPERIOR.
COPPER COMPANY.

*Principal and agent—Corporations—Apparent authority—Estoppel.*

1. A corporation which has held out its foreman as authorized to
   make any reasonable contract for the employment of men is
   estopped from questioning such a contract made with an
   employé, although no express authority is shown for making
   it.

2. Where the foreman of a foreign corporation is shown to have
   had the general charge of the employment of men in its works
   for at least nine years, who have been paid by the day, but
   many of whom worked through the season, the contract as to
   the *time* of their employment being unknown to the public,
   and said foreman is not shown to have been limited in such
   hiring, an employé hired for the remainder of the season by
   said foreman is justified in supposing from all the circumstan-
   ces that the foreman had the authority to make the contract,
   and the corporation cannot escape the *apparent* authority with
   which it has so long invested him.

Error to Wayne. (Hosmer, J.)   Argued January 10, 1889.
Decided January 25, 1889.

*Assumpsit.*   Defendant brings error.   Affirmed.   The
facts are stated in the opinion.

*Otto Kirchner,* for appellant, contended:

1. Cocher having no express authority in the premises, nor entitled
   to exercise it by virtue of his position, it seems to me very
   plain that his authority, as between the plaintiff and defend-
   ant, cannot extend beyond that theretofore exercised by him;
   citing Whart. Agency, § 127.

*Conely, Maybury & Lucking,* for plaintiff, contended:

1. The apparent and express authority of Cocher are identical unless
   the contrary is shown; citing Mechem, Agency, § 283.

2. As illustrating the general rules applicable to this case, counsel
   cited Story, Agency, §§ 17, 19, 126, 127, and note 2 p. 152;
   Mechem, Agency, §§ 283-285.

3. When an agent is empowered to accomplish an object, he impliedly has authority to do all necessary and proper acts, and to use all necessary and proper means, to accomplish the object; citing Story, Agency, §§ 55, 59, 60, 97, 102, 103; Mechem, Agency, 280; *Leroy v. Beard*, 8 How. 468; *Nelson v. Railroad Co.*, 48 N. Y. 498; *Layet v. Gano*, 17 Ohio, 466; *Palmer v. Hatch*, 46 Mo. 587, and this is so as to outsiders, even though the particular acts or means are directly contrary to special instruction; citing Story, Agency, § 73, and cases cited; *Kreiter v. Nichols*, 28 Mich. 496.

MORSE, J. The plaintiff declared orally in *assumpsit* on a special contract claimed to have been made June 17, 1887, with defendant, by which defendant agreed to employ him for the remainder of the season of 1887 at dipping copper in defendant's works at Detroit at $2.50 per day; said season lasting until December 21, 1887. It is alleged that defendant violated the contract by discharging the plaintiff, without cause, June 18, 1887, and refused to pay him his wages. The only controversy upon the trial was as to the hiring. The action was brought in a justice's court, where plaintiff recovered judgment. Defendant appealed to the Wayne circuit, where plaintiff again recovered the sum of $243.80. The case is brought into this Court on writ of error, and it is claimed the error consisted in the failure of the circuit judge to direct a verdict for the defendant.

The plaintiff was hired by one Cocher, whom, it is argued, had no authority to hire any workmen for the defendant other than by the day, and that no express authority was shown in him to hire plaintiff at all, and that his apparent authority, on which plaintiff relies, did not extend, under the proofs, beyond hiring by the day.

The facts shown in the record are briefly these: The works of the company have been carried on at Detroit for a great many years. The business was smelting copper. The defendant is a foreign corporation, doing business in

this State. Its general agent was James R. Cooper, who did not reside in Detroit, and who visited the works only occasionally.. Andrew Cocher was the principal foreman of the works, and hired and discharged all the men employed in the business, and had done so for at least nine years. Tunison, previous to the hiring for which he claims damages in this suit, had worked for the defendant in the years 1882, 1883, 1884, and 1885 by the day, being hired in all these years by Cocher. On or about June 17, 1887, plaintiff was working in a rolling mill. Cocher came to see him, and wanted him to go to work for the defendant, as he was short of men. Plaintiff told him that he had a good job; was getting $1.75 per day, and he could not go back to the smelting works unless he was employed for the season. Thereupon Cocher agreed to hire him for the season at $2.50 per day. He went to work on June 18; worked one day, when Cocher discharged him. Cocher said to him: "John, I am sorry, but Mr. Reeder don't want you any more." Cocher told Tunison he did not know what the reason was, but Reeder told him to tell plaintiff not to come to work any more. Tunison reported afterwards to Cocher for work, but was not given any. He got some work elsewhere, and earned $166.65 between June 17 and December 21, 1887, which last date, he claimed, was the closing of the season at defendant's works.

The works at Detroit received ore from the Lake Superior country, and when the ore that could be brought down during the season of navigation was smelted they were closed, and the season was ended until the next spring. There were two separate buildings in which the smelting was done. Cocher had charge of one, and Thompson the other. Thompson's duties were the same as Cocher's, except that he did not hire or discharge men, and was under Cocher's orders. One Reeder was

book-keeper and office manager. He had nothing to do with the employment or discharge of the workmen. He gave no orders to Cocher save those that were transmitted to him by the officers of the company, chiefly from Cooper, whose headquarters were in the Lake Superior country. He testified that Cocher had no instructions as to how he should employ men, and no other person about the works had had any authority to employ laborers, since he had been there, some six or eight years. As to the employment and discharge of Tunison he testified that in May he told Cocher not to hire him until he heard from Cooper. He wrote Cooper about it, and on June 18 he received an answer with instructions to dispense with plaintiff, if they could get along without him. He saw that Tunison had gone to work, and he called Cocher's attention to the letter, and plaintiff was discharged.

There was also evidence given by a brother of plaintiff and the second foreman, Thompson, tending to show that Cocher had complete control of the hiring and discharge of the men. Neither of them knew of any hiring save by the day, but many of the employés worked right along through the season, and they did not know what the contract of hire was with them.

We think the question in issue was rightly submitted to the jury. The court instructed them that no express authority was shown in Cocher to employ plaintiff; but if the—

"Company so dealt with the public at large, had they so dealt with the men, had they so dealt with their employés, had the relation between Mr. Tunison and the company and Mr. Cocher been such in the position, that the company held out Mr. Cocher as authorized to make any reasonable contract for the employment of labor,"—

Then the company was estopped from saying that Cocher was not authorized to employ.

There was certainly testimony in the case sufficient to warrant the jury in finding that Cocher was in fact the general agent of the company at the works in Detroit as far as the hiring of men was concerned. For several years he had exercised not only this authority, but also the authority to discharge. The defendant's own witness, and the only one testifying in its behalf, testified that Cocher had no instructions as to how he should employ men. As far as the plaintiff or the public were concerned this authority, so long exercised without limitation by Cocher, continued. No one knew what Reeder had said to Cocher about employing Tunison save Reeder and Cocher.

But it is argued that the testimony shows that the apparent authority of Cocher was confined to hiring by the day. We do not think so. It is true there was no instance shown of his hiring any one save plaintiff for the season, or for any other period than by the day. But when it is shown that he was not limited as to his hiring, and men who were paid by the day, many of them, worked through the season, and the contract as to how long they should work was not known, the jury had a right to infer that Cocher could, under his authority, and as agent, have hired them for the season, as he did the plaintiff, and the plaintiff was justified in supposing from all the circumstances that Cocher had authority to make the contract he did with him, and the company could not escape the apparent authority with which it had so long invested Cocher.

The judgment is affirmed, with costs.

The other Justices concurred.