JOHN CEEDER v. THE H. M. LOUD & SONS LUMBER COMPANY (A CORPORATION).

*Corporations—Authority of officer—Agency—Employment of men.*

1. The president of a lumber company, in the active management of its business, is held to have authority to employ sawyers for the season at an agreed price per day; no limitation upon his power to employ men being shown, nor that authority had been conferred upon any particular person with reference to such employment.

2. The following general propositions are summarized from the opinion of Mr. Justice McGRATH:

   a—The president of a manufacturing company, who is in the active conduct and management of its business, must be presumed to have all the powers of any agent exercising like control or management, and to have authority to do what is usually and ordinarily done by such agents or managers.

   b—The primary intention of a corporation in employing an agent is that he shall be enabled to accomplish the purposes of

the agency, and third persons are invited to deal with him upon that understanding.

c—The fact that a person having the general direction and active control of the business of a corporation is also its president does not operate as a limitation of the powers usually exercised by such agents or managers; nor is his authority limited to that possessed by virtue of his office, but it is incident to the management of the business. *Mining Co. v. Senter*, 26 Mich. 73, 76; *Iron Works v. Bresnahan*, 60 Id. 332; *Whitaker v. Kilroy*, 70 Id. 635.

Error to Bay. (Cobb, J.) Submitted on briefs June 9, 1891. Decided July 28, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Hanchett, Stark & Hanchett,* for appellant, contended:

1. In the absence of any proof, a president of a corporation has no more power than any other director, except that he is presiding officer at meetings of the board of directors; beyond that, his powers and authority depend upon the by-laws or resolutions of the board, or acts which would work an estoppel; citing 1 Mor. Cor. § 537; *Railway Co. v. James*, 22 Wis. 197; *Titus v. Railroad Co.*, 37 N. J. Law, 102; and individual directors have no power whatever to bind a corporation; citing *Lockwood v. Boom Co.*, 42 Mich. 539.

*C. E. Pierce,* for plaintiff, contended for the doctrine of the opinion.

McGRATH, J. Ceeder sues for wages, claiming a hiring for the season of 1889 at $3.50 per day, and setting up a discharge without cause before the expiration of his time.

One Aiken says that, in the spring of 1889, H. M. Loud, who was the president of the company, instructed him to go to Bay City, and employ two sawyers for the season, at $3.25 per day each; that he went to Bay City, but was unable to get his men at less than $3.50 per day, and sent word to Loud by one Chase, and wired Peter-

son, who was the superintendent of the mill, to meet Chase; that he received the reply telegram the same evening, and employed plaintiff and another for that season at $3.50 per day. He was not allowed to give the contents of the telegram, but, after stating the employment, he was asked, "did you have any instructions from Mr. Loud to make such an arrangement?" and replied, "yes, I did."

Ceeder testifies to his employment by Aiken for defendant at $3.50 per day for the season; that—

"He [Aiken] came there with the telegram from H. M. Loud & Sons Lumber Co. He read it over at the house. * * * That was Tuesday. * * * I left Bay City on the 7th of May, and arrived at Oscoda that night, about 6 o'clock. Upon my arrival I saw Mr. Loud, and gave him a letter that Mr. Aiken had given me. He says, 'All right; you are the two sawyers.' Says I, 'Yes.' * * * Then Mr. Loud said, 'Look around town, and I will see Mr. Peterson to-morrow, and give you work.'"

That he went to work on the 10th of May, and worked until July 6, when he was discharged without cause; that in June plaintiff and Paul Lemme, who was hired with plaintiff, were in the office of the company, and Loud was present, but witness was not sure that Loud heard the conversation; that Lemme asked Peterson if he was going to pay $3.50 per day for the season, and Peterson said, "Yes, that is the understanding;" that plaintiff could not get work till the 29th of July, when he obtained employment at $2 per day for the balance of the season.

He was paid at the rate of $3.50 per day up to and including the 5th day of July, and it is admitted that, if entitled to a verdict at all, he was entitled to $222.50, the amount found to be due by the jury.

The defendant raised two questions of fact upon the trial:

1.   That Aiken was not instructed to employ plaintiff for the season.

2.   That plaintiff was discharged for cause.

Both of these questions have been settled by the verdict. The only question raised here is that defendant is a corporation; that this is not a case of the ordinary employment of labor for the necessities of the company, but a special contract for the entire season, and it was not shown that the president had any authority to make such a contract. No testimony was offered tending to show that any limitation upon the president's powers with respect to the employment of men, nor was there any testimony offered to show that any authority had been conferred upon any particular person with reference to the same subject. It appears that Loud was in open and notorious charge of the business, and was there in the office from day to day, directing its conduct. The business of the corporation was the manufacture of lumber.

A president of a manufacturing company, who is in the active conduct and management of the business, must be presumed to have all the powers of any agent exercising like control or management, and to have authority to do what is usually and ordinarily done by such agents or managers. The primary intention of a corporation in employing an agent is that he shall be enabled to accomplish the purposes of the agency, and other persons are invited to deal with the agent upon that understanding.

In *Adams Mining Co. v. Senter*, 26 Mich. 73, 76, referring to the powers of a mining agent, this Court say:

" We are not satisfied that any testimony would be needed to show the extent of the ordinary powers of an agent in charge of such a mine. The authority of such officers must, within the usual range of business, at least,

be recognized judicially, like that of bank cashiers, vessel captains, and other known agents. The mining law recognizes agents by name, as known representatives on whom process may be served. They are the persons who have charge, personally, of the local business at the mines, and are necessarily to be treated in law as general agents, to do all that is fairly within the scope of corporate business in conducting the operations in that locality. * * * The business could not be conducted at all without a very wide discretionary power. There is no reason, and can be no legal principle, which will put the agent of a corporation on any different footing than the agent of an individual in regard to the same business. A general agent needs no instructions within the range of his duties, and any limitations on his usual powers would not bind others dealing with him, and not warned of the restrictions."

The fact that a person having the general direction and active conduct of the business of a corporation is also its president does not operate as a limitation of the powers usually exercised by such agents or managers. His authority is not limited to that possessed by virtue of his office as president, but is incident to the management of the business. The case is clearly within the principle laid down in *Adams Mining Co. v. Senter*, cited above. See, also, *Eureka Iron Works v. Bresnahan*, 60 Mich. 332; *Whitaker v. Kilroy*, 70 Id. 635.

The judgment is affirmed, with costs to plaintiff.

The other Justices concurred.