### GRAND TRUNK WESTERN R. CO. v. H. W. NELSON CO., Inc.

### No. 8552.

Circuit Court of Appeals, Sixth Circuit.

Jan. 9, 1941.

Rehearing Denied March 13, 1941.

Cornelius W. Wickersham, of New York City (Cornelius W. Wickersham, of New York City, John J. Gafill and Frederick V. Slocum, both of Detroit, Mich., and Cornelius W. Wickersham, Jr., and Cadwalader, Wickersham & Taft, all of New York City, on the brief), for appellant.

Wilber M. Brucker, of Detroit, Mich. (Joseph H. Clark, Wilber M. Brucker, Harold J. Waples, and Clark, Klein, Brucker & Waples, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a judgment of $871,000 in favor of appellee, pursuant to a jury verdict in an action to recover damages growing out of the construction of a railroad. Appellee declared in three counts: breach of the written contract, breach of a supplemental oral agreement, and fraud.

Originally appellant's motion to dismiss on all counts was sustained and on appeal this court reversed as to counts 2 and 3 and affirmed as to count 1. 6 Cir., 80 F.2d 986. At the trial, the court overruled appellant's motion for a directed verdict on the remaining two counts and the jury found for appellee; hence this appeal.

Appellant relies on 131 points. We treat all those that are not briefed as abandoned. (This court, Revised Rules January 1, 1940, Rule 21); Kahn v. United States, 6 Cir., 20 F.2d 782.

Appellee was a general contractor and, pursuant to the request of appellant, was the successful bidder for the grading and construction of a double track railroad on appellant's line extending from a point in Royal Oak, Michigan, near M. P. 13, northerly to M. P. 22.1, north of Birmingham, Michigan.

A conventional construction contract was prepared between May 29 and June 21, 1928, and executed by the parties June 22, 1928, according to which appellant was to provide the right-of-way free from any liens, claims or adverse interests. About June 1, 1928, appellant notified appellee it had procured substantially all the right-of-way and ordered it to place its equipment, organize its construction crew and commence work at Maple Avenue, Birmingham, Michigan, where an underpass was to be constructed. Appellee placed its equipment and assembled its crew at this point and began work, after which on June 12, 1928, it was notified by appellant it would have to discontinue construction there, because the land was burdened with certain reciprocal negative easements or restrictions, requiring it to be used exclusively for residential purposes and that some of the owners of these easements were threatening injunction proceedings prohibiting the construction of the railroad. Appellant directed appellee to move its equipment from this point and begin construction 2½ miles south at Charing Cross Road, which appellee did, when on July 3, 1928, owners of negative easements at that point instituted injunction proceedings again interfering with the work, which prevented construction until July 27, 1928, at which time the injunction was dissolved.

On August 3, 1928, other owners procured a like injunction completely stopping construction until July 12, 1929. Thereafter, under extensions granted by appellant, appellee completed the entire contract by August, 1931, according to its terms, and was paid the amount agreed thereunder.

Appellee, in its second count, alleged that appellant, through its chief engineer, entered into an oral contract with it that in consideration of appellee keeping its machinery and equipment on the premises and its construction crew organized ready

for work immediately on the dissolution of the injunctions it would pay to appellee all losses it might sustain on account of the incident delay.

In the third count, appellee alleges that appellant committed a fraud in that on or about June 1, 1928, it represented that it had secured substantially all of the right-of-way when in fact it well knew this to be false and while it was in physical possession of the property, it was burdened with reciprocal negative easements or restrictions requiring its use exclusively for residential purposes and that appellee had no knowledge of these burdens and in entering into the contract relied exclusively on the representations of appellant that it had acquired the right-of-way. It alleges that due to these misrepresentations, it was delayed in the construction of the work to its loss and damage. It will thus be seen that the two counts are correlative to the extent that appellee seeks to recover under each, loss due to delayed completion of the contract.

We discuss first the issue of fraud.

Appellant's relocated right-of-way was at the behest of the State of Michigan, and the present contract expressly stated in paragraph 7 that the State of Michigan was acquiring the right-of-way, and it was provided that the appellee agreed "any statement or provision herein contained or contained in the provisions hereto annexed (whether express or implied) to the contrary notwithstanding to enter in on any part of the line where the right-of-way has been acquired and proceed to construction on that part without at any time making any claim against the company or the State of Michigan for any delay it may encounter through the failure or inability of the State to acquire any part, or all, of the necessary right-of-way."

In our former opinion, we held that this provision of the contract was not a barrier to appellee's recovery for delay due to the fraudulent concealment of appellant. 6 Cir., 80 F.2d 986.

Appellant raises no issue as to this court's prior adjudication, but insists there is no substantial evidence supporting the allegations of fraud and if there is any the substantial evidence shows appellee waived it. Disregarding conflicting testimony and viewing the evidence and inferences therefrom most favorably to the appellee, the following facts substantially appear:

On May 29, 1928, appellant accepted by indorsement thereon, appellee's bid dated May 11, 1928, and its certified check for $10,000 as a guarantee, under the terms of which appellee was required to begin work within ten days thereafter and to complete the project on or before December 31, 1928. The formal contract was signed by appellee June 15, 1928, and delivered to appellant on June 22, 1928.

On May 31, 1928, appellee's superintendent conferred with appellant's chief engineer and was advised that appellant had all the right-of-way except two small parcels near Royal Oak, which would be acquired before needed. They discussed the plan of work and agreed it should begin with the grade separation at Maple Avenue, whereupon appellee's superintendent telegraphed to its yard in Ohio to have the organization and equipment sent there. Appellee's president came to Detroit on June 6, 1928, and was assured by appellant's Property and Tax Commissioner that it had all of the right-of-way except some small parcels near Royal Oak, and was also advised the same fact by appellant's chief engineer and that he should get his men and equipment on the job for a fast start. Acting on this assurance, appellee had its men start clearing and grubbing on the morning of June 3, 1928, in preparation for the shovel. Some of the equipment arrived June 8, and by June 14, twenty-eight carloads of it had been either shipped or received and seventy-two men were on the job; ties and rails were laid south of Maple Avenue and a hauling track built. The 50-B Diesel shovel had arrived at Birmingham Station, been unloaded, and set up ready to move to the Maple Avenue grade separation, a mile distant. On June 12, appellee's foreman was advised by one of appellant's officials that he could not work at Maple Avenue, but should go to Charing Cross, although he did not inform him the reason for the change. Appellee's president saw appellant's chief engineer on June 14 and was informed by him that the delay was caused by a threatened injunction, which he minimized and which he said would be immediately cleared up.

The necessary equipment was then moved to Charing Cross and the work started there June 15 with the Diesel shovel and was finished June 26. Appellee

then began excavating at the cut at Station No. 383. Work was also started at Trowbridge Cut for the standard gauge hauling operation. By the end of June, 156 men were at work and a 100-B Diesel shovel was put on the job to expedite it and to make up for the earlier delay. Camps were constructed in zones 1, 2 and 3 Barrow at Maple Avenue, and all was in condition to push the work rapidly, when on July 3, 1928, suit was brought by some of the property owners restraining operations in zone 1, to which appellee was made a party defendant. Appellee was advised by appellant's agents that the injunction was improvidently issued and would be lifted promptly. Between July 3 and July 27, 1928, at which time the injunction was lifted, appellee worked where and as it could. After the injunction was dissolved, it was told to go ahead full speed and by July 29 had 198 men at work. On August 3, 1928, three additional injunctions were sued out by property owners, claiming reciprocal negative easements restraining all work in zones 1 and 2, except on a small strip on the north side of Trowbridge Farms. These injunctions were dissolved July 12, 1929, and thereafter the work completed.

The special circumstances under which the contract in question was made have a bearing, not only on its interpretation, but upon the rights of the parties under it. It is quite obvious that its provisions in respect to time were of its essence and regarded by the parties as of primary importance.

On May 18, 1928, appellee executed a completion bond in the penal sum of $300,-000 and obligated itself to complete the contract by December 31, 1928.

The procurement of the right-of-way was essential and prerequisite to doing the work. To assume that appellee was indifferent to the state of appellant's title to the right-of-way is to impute to it a reckless and foolhardy undertaking.

▪ Fraud has manifold devices and its ingredients cannot be so defined as to include all cases, except by such general statements as must refer the question to the judgment of the jury on the facts. A party is guilty of fraud in negotiating a contract when he makes a false representation concerning the subject matter by means of which he puts the opposite party under mistake as to the terms of the bargain and whether a party misrepresent-

ing a material fact knows it to be false or makes the assertion without knowing whether it is true or false is wholly immaterial, for the affirmation of what one does not know or believe to be true is equally in morals and law as unjustifiable as the affirmation of what is known positively to be false and even if a party innocently misrepresents a material fact by mistake, it is equally conclusive for it operates as a surprise and misrepresentation on the other party. A false statement as to the character of title to real estate in a transaction where the title is material, when made as a fact without regard to its truth or falsity for the purpose of inducing another to contract concerning it, constitutes an actionable fraud where a contract in relation to it is induced thereby in reliance thereon and injury results therefrom. Jackson v. Collins, 39 Mich. 557; Jackson v. Armstrong, 50 Mich. 65, 14 N.W. 702; Weber v. Weber, 47 Mich. 569, 11 N.W. 389; Face v. Hall, 177 Mich. 495, 143 N.W. 622; Pitt Construction Company v. City of Dayton, 6 Cir., 237 F. 305.

▪ In our opinion there was substantial evidence of fraud on the part of appellant in representing to appellee it had acquired title to the right-of-way when in fact it had not.

Appellant insists that the case at bar is within the rule that a person who has been defrauded by another in making an executory contract is barred of a remedy for his damages for the fraud by performance with knowledge of the fraud acquired subsequent to the making and previous to the performance. Monroe v. Hoffman, 276 Mich. 281, 267 N.W. 836; Van Scherpe v. Ulberg, 232 Mich. 699, 206 N.W. 323.

▪ We are not permitted to pass on the weight of the evidence and, taking the view most favorable to appellee, it was notified on June 6, 1928, by appellant's chief engineer that appellant had all the right-of-way, but was advised by another of appellant's officers that this was not true; that a few small parcels near Royal Oak had not been acquired. On June 12, appellee was notified it would have to discontinue work at Maple Avenue because of a threatened injunction over the right-of-way.

There is no evidence in the record that appellee had actual notice of the negative

easements until July 3, 1928, when it was made a party to the injunction proceedings. On that date appellee had five steam shovels on the project, accessory equipment, which it claims had a value in excess of $250,000, and had a working crew of 156 men. At the date of the threatened injunctions and when the two injunctions were actually issued, appellant's officers and agents assured appellee they were of no importance and would be cleared up immediately and would cause only a temporary delay.

Appellee gave no notice of the abandonment of the contract. It rendered a statement to appellant on October 2, 1928, covering in part the alleged damages sustained to August 31, 1928, and rendered like statements each month thereafter until June 24, 1929, and continued with and completely performed the contract.

The rule relied upon by appellant has no application to contracts where the party complaining of the fraud has partially discharged his obligation. When the fraud is brought to his notice, which would put upon inquiry a man of ordinary prudence but with a plausible explanation by the opposite party, his failure to terminate or rescind the contract is excusable. Great Northern Exploration Company v. Mizen, 149 Minn. 440, 184 N.W. 20; Warnes v. Brubaker, 107 Mich. 440, 65 N.W. 276; Williamson v. Hannan, 200 Mich. 658, 166 N.W. 829; Hutchinson v. Westbrook, 191 Mich. 484, 158 N.W. 135; Loewer v. Harris, 2 Cir., 57 F. 368; Dinius v. Bolibrzuch, 270 Mich. 618, 259 N.W. 156. Beyond doubt the appellee in the case at bar was at liberty on the failure of appellant to perform its engagement on which it depended to rescind the contract but, as we understand the rule applicable to the facts here, appellee was not compelled to abandon the contract and claim damages but could still complete it and earn the compensation to which it was entitled notwithstanding the failure of appellant to perform its undertakings. Appellee could have rescinded the contract but was not obliged to do so as it was not probable a rescission would afford it an adequate remedy. Foster Machine Company v. Covel Company, 219 Mich. 455, 189 N.W. 228; Busch v. Wilcox, 82 Mich. 315, 46 N.W. 940; United States v. Atlantic Dredging Company, 253 U.S. 1, 12, 40 S.Ct. 423, 64 L.Ed. 735.

In our opinion, considering the nature of the subject, the position and relation of the parties and the surrounding circumstances, it was for the jury to weigh the evidence and determine whether appellee in fact relied upon the representations of appellant's agents and officers and exercised reasonable prudence. Subsequent acts under the contract and rights acquired by it may or may not have constituted a waiver, depending upon whether done with full knowledge of the fraud and with the manifest intention of abiding by the contract and waiving all rights to recover damages for the deception.

Turning to appellee's claim under the alleged oral contract, there is substantial evidence that on July 5, 1928, appellant requested the appellee to prepare a statement of its losses incident to delay caused by the injunction of July 3, 1928, to be used as evidence in opposition to continuance of the restraining order and appellee was advised by appellant, in the meantime to continue the work on any part of the project not affected. On July 27, 1928, appellee's president was advised by appellant's resident engineer that the injunction would be lifted shortly and for appellee to keep all of its equipment in position and its working crew organized to resume work instantly on its dissolution and on this date appellant's chief engineer agreed with the appellee's president that if the equipment and working crew were maintained on the job for immediate resumption of work on the lifting of the injunctions, appellee would be paid by appellant for losses and damages sustained by it due to delay. On this alleged oral agreement, appellee relies in its second count.

Appellant resists recovery on this count on two grounds, (1) that its chief engineer had no authority, express or implied, to enter into such a contract, (2) that appellee neither accepted nor assented to the agreement.

The principle applicable is that if the chief engineer had actual charge and management of the business in hand by the appointment of or with knowledge of its directors, even without evidence of actual authority, appellant is bound by his acts and contracts which were necessary or incidental to the business. The question of whether the contract on which appellee relies falls within the category thus defined is manifestly one to be deter-

834

mined with reference to the character of the corporate business and to the special elements, if any, which are presented by the testimony. Martindale v. Lobdell Mfg. Co., 189 Mich. 477, 155 N.W. 559, L.R.A. 1918F, 1; Blodgett v. Foster, 120 Mich. 392, 79 N.W. 625; Teakle v. Moore, 131 Mich. 427, 91 N.W. 636; Ceeder v. Lumber Co., 86 Mich. 541, 49 N.W. 575, 24 Am.St.Rep. 134; Brace v. Northern Pacific Railway Co., 63 Wash. 417, 115 P. 841, 38 L.R.A.,N.S., 1135; Henderson Bridge Co. v. McGrath, 134 U.S. 260, 276, 10 S.Ct. 730, 33 L.Ed. 934; Sun Printing & Publishing Ass'n v. Moore, 183 U.S. 642, 650, 22 S.Ct. 240, 46 L.Ed. 366.

■ The general rule is that a promise to pay a construction contractor additional compensation for performance of a contract which he is under obligation to perform is invalid because without consideration, but the exception is equally well recognized that where, during the prosecution of the work, some unforeseen and substantial difficulties in its performance occur which were not known or anticipated by the parties when the contract was entered into and which casts upon the contractor additional burdens not contemplated and the contractee promises the contractor extra pay or benefits if he will complete the contract, such an agreement is valid and enforceable. United States v. Cook, 257 U.S. 525, 526, 42 S.Ct. 200, 66 L.Ed. 350; Scanlon v. Northwood, 147 Mich. 139, 110 N.W. 493. It is unnecessary that such a change or modification of the contract be in writing, even though the original contain an express provision that no change or modification thereof can be made except by writing. A written contract is of no higher dignity than an oral one except under the statute of frauds, and there can be no more force in an agreement in writing not to agree by parol than in a parol one not to agree in writing and every such agreement is ended by the new one which contradicts it.

■ As a rule, corporations like natural persons under agency contracts are bound only when the agent is either expressly or impliedly authorized to act for his principal, but in applying this rule it must be recognized that owing to the enormous scope of the business of present day corporations their activities are frequently divided into departments with

managers or superintendents each of whom in such cases has the same relation to his department as has the general manager or superintendent to the general affairs of the corporation and the corporation is liable for the acts of the department managers or superintendents within the apparent scope of their authority. Henderson Bridge Company v. McGrath, 134 U.S. 260, 276, 10 S.Ct. 730, 33 L.Ed. 934.

■ Appellant's chief engineer was directing manager and overseer in the execution and performance of the present contract and was its only agent with whom appellee was required to deal. In making the alleged agreement on which appellee relies, he was discharging an administrative duty as an executive officer of the corporation and had ample authority to agree on its behalf to modify the terms of the original. It was a contract which was necessary to be made in the transaction of appellant's ordinary business and there is no evidence his authority was specifically restricted. Tunison v. Copper Company, 73 Mich. 452, 41 N.W. 502; Adams Mining Co. v. Senter, 26 Mich. 73; Ceeder v. Lumber Co., supra; Indianapolis Rolling Mill Co. v. St. Louis, Fort Scott & Wichita Railroad, 120 U.S. 256, 259, 7 S.Ct. 542, 30 L.Ed. 639.

■ This view is deducible only from the evidence most favorable to appellee and it is sufficient for the purpose of this review that there is some substantial evidence to support every fact essential to the result. Massachusetts Bonding & Insurance Co. v. Freight Lines, Inc., 286 Mich. 179, 281 N.W. 584. It is an important fact that appellee was ready and able to perform the contract within the time agreed upon and that this right was denied for causes beyond its control and on each occasion when the work was delayed by injunctions, appellant's chief engineer conferred with appellee's chief officers and instructed them what to do in the premises. It is also important that appellee promptly and continuously submitted claims to the appellant for losses sustained by it by delay and no officer or agent of appellant at any time before the completion of the contract denied the authority of the chief engineer to deal with appellee on these as well as all other matters pertaining to the contract.

■ Appellant's contention that there is no substantial evidence that appellee accepted or assented to the modifica-

tion of the original contract is without merit. Under the present situation, acceptance need not be express or formal, but may be shown by conduct or acquiescence. Admittedly, both parties had dealings with reference to the injunctions and the incident delay and knew that appellee had its machinery and equipment on the ground with a crew organized to do the work and kept them there during the period of restraint and that delay in all probability would result in loss to the appellee. A fair inference may be drawn from the evidence that appellee acquiesced in appellant's proposal according to its exact terms. In our opinion, the question of the assent of appellee was for the jury. Sines v. Supts. of the Poor, 55 Mich. 383, 21 N.W. 428; Sweeney v. Jordan, 223 Mich. 196, 193 N.W. 882; McKenzie v. Sykes, 47 Mich. 294, 11 N.W. 164; Curnan v. Delaware & Otsego Railroad Co., 138 N.Y. 480, 34 N.E. 201; Sartoris v. Utah Construction Co., 9 Cir., 21 F.2d 1.

■■■■ Appellant has assigned many subordinate points. It claims that the court erred in its charge to the jury on the question of its ratification of the alleged oral contract without the jury being first required to find that such a contract had been entered into by either an authorized or unauthorized agent of appellant. Instructions must be considered as a whole and if taken together fairly present the case to the jury, error cannot be predicated upon the fact that, standing by itself, some one part of them is misleading.

It is unfair to the trial court to pick out certain portions of its charge omitting others which limit and qualify the same and then insist the court committed error. Magniac v. Thomson, 7 Pet. 348, 32 U.S. 348, 389, 8 L.Ed. 709.

Earlier statements were made by the court in its charge which required the jury to find that the oral contract had been consummated. Applying the above rule, appellant's criticism is without justification.

Appellant's assistant general attorney represented both appellant and appellee in the injunction proceedings in the state court. During the course of the trial appellant called him to testify as to a conversation he had had with appellee's vice president and general superintendent while the injunction suit was pending. Appellee insisted that the communication was privileged and the court rejected the witness.

It was avowed if permitted to testify he would state that on July 6th, after the first injunction had been served, he advised appellee's general superintendent to employ independent counsel, but was advised that, under clause 7 of the original contract, appellee could not claim damages for delay and the attorney at that time advised appellee's vice president that there was no way of predicting how long the completion of the contract would be .delayed by reason of the injunctions; that the case might be appealed to the Supreme Court of Michigan and remain undecided for a year. Appellant insists the court committed a reversible error in the exclusion of this testimony.

■■■ The conversation under the circumstances was not privileged. The rule is applicable that when two persons employ a lawyer as their common agent, their communications to him as to strangers will be privileged, but as to themselves, they stand on the same footing as to the lawyer and either can compel him to testify against the other as to their negotiations in any litigation between them, when the subject of the conversation is competent. Denby v. Dorman, 261 Mich. 500, 246 N.W. 206; In re Cunnion's Will, 201 N.Y. 123, 94 N.E. 648, Ann.Cas.1912A, 834; House v. House, 61 Mich. 69, 27 N.W. 858, 1 Am.St.Rep. 570; Cady v. Walker, 62 Mich. 157, 28 N.W. 805, 4 Am.St.Rep. 834.

■■■■ The tendered testimony, so far as it related to the contract, was no more than the expression of an opinion as to the law and not a declaration or admission of a fact, and was clearly incompetent. Sturm v. Boker, 150 U.S. 312, 336, 14 S.Ct. 99, 37 L.Ed. 1093; Fidelity & Casualty Company v. Haines, 8 Cir., 111 F. 337; Paramount Productions v. Smith, 9 Cir., 91 F.2d 863. The statement of the witness as to delay was merely cumulative and its rejection harmless. Drumm-Flato Commission v. Edmission, 208 U.S. 534, 28 S.Ct. 367, 52 L.Ed. 606.

In January, 1929, appellee effected a reorganization. Under the plan, its assets were transferred to H. W. Nelson who assumed its liabilities and immediately transferred the assets to a new corporation, The Nelson and Chase & Gilbert Company of Delaware, which in turn assumed the liabilities. Thereafter appellee continued in existence and appellant dealt with it as the general contractor. Under paragraph 16

of the contract, appellee was prohibited, without the consent in writing of appellant's chief engineer, from reletting or transferring the contract in whole or in part and in the event the chief engineer consented, all of the obligations and liabilities of the appellee under its contract remained in force.

In support of its motion and grounds for a new trial, appellant alleged that under Section 14010, Michigan Compiled Laws of 1929, every action must be prosecuted in the name of the real party in interest and inasmuch as appellee had assigned all of its assets to the new corporation, which was the real party in interest, these proceedings should be dismissed. The motion was denied and to the ruling it assigns error. Appellant made no issue as to the capacity of appellee to maintain the action until after the conclusion of the trial. It plead the general issue and it may be conceded for present purposes that the lack of capacity to sue could be availed of under a general plea but appellant's contention must be rejected on other grounds.

■■■ So far as appellee's cause of action rests upon the contract, it was non-assignable without appellant's consent which is neither alleged nor proved. Burck v. Taylor, 152 U.S. 634, 652, 14 S.Ct. 696, 38 L.Ed. 578. Claims for compensation for possession, use, damage, or appropriation of tangible property constitute personal estate equally with the property out of which they grow and are assignable under the laws of Michigan, although their validity may be denied and their value may depend upon the uncertainties of litigation. However, a mere right to litigate for a fraud and nothing more is not assignable at law or in equity, and would not be a salable asset, or an interest in property to which the right to sue passes as incidental. Cochran Timber Company v. Fisher, 190 Mich. 478, 157 N.W. 282, 4 A.L.R. 9.

· [35] Appellee's third count was a mere naked cause of action for fraud and any assignment of it would be void as against public policy and savoring of maintenance. Traer v. Clews, 115 U.S. 528, 539, 6 S.Ct. 155, 29 L.Ed. 467.

On November 30, 1932, appellee, in consideration of $25,433.55 as evidenced by a written agreement, settled in full all of its claims and demands against appellant except those due to delay in the performance of the contract, because of litigation concerning the right-of-way.

Appellant tendered evidence that it was the intention of the parties under the contract to confine the excepted claims to clause 7 of the original agreement and that at no time prior to the institution of this action had appellee made claims against it because of alleged fraud or oral agreement and that it would not have entered into the settlement had it known that appellee was basing its claim for damages on either of these two grounds.

It argues that the proof tendered established estoppel against appellee and that the court committed reversible error in excluding it.

■■■ The effect of an estoppel in pais is to prevent the assertion of an unequivocal right, or preclude a good defense, and justice demands it should not be enforced unless substantiated in every particular. The concept of the doctrine is fraud, actual or constructive on the part of the person sought to be estopped. What will amount to the suggestion of a falsehood or the suppression of the truth may be difficult to determine in all cases, but before estoppel may be invoked to defeat an otherwise just claim, some inexcusable wrong that constituted direct motive or induced the outlay or purchase is necessary to give silence or acquiescence the force of estoppel in pais. In order to apply an estoppel by silence it is indispensable that the party standing by and concealing his rights should be fully apprised of them and should by his conduct show such gross negligence as to encourage or influence the opposite party, who is wholly ignorant of his adversaries' claim, to act to his disadvantage.

■■■ Applying these principles to the facts in this case, it appears that long before the settlement was made, appellee was asserting claim for damages against the appellant due to delay in obtaining the right-of-way. The contract expressly excluded settlement of these claims and, while the legal ground on which appellee was claiming is not therein stated, there is no ambiguity in the language used which was broad enough to support any legal basis for such claim. Appellant does not contend that it paid more in the settlement than it owed. Estoppel does not arise where the person accepting the benefits is entitled thereto, regardless of the questioned transaction. The excluded evidence was insufficient to establish estoppel in pais. Nelson v. Chicago Mill & Lumber Corporation, 8 Cir., 76 F.2d 17, 100 A.L.R. 87.

■ In its charge the court stated in substance that paragraph 7 of the contract by which the appellee waived any right to damages due to delay in the acquisition of the right-of-way must be read in the light of the statute, Act No. 340, Public Acts of Michigan 1927, and the contract between appellant and the State of Michigan, which provided that appellant might, before the right-of-way had been fully acquired, commence and prosecute such work in any section where sufficient right-of-way had been acquired to permit of expeditious and economical work.

Appellant assigns error and contends that the court's charge changed the terms of the contract. In paragraph 7 it is stated that the right-of-way is being acquired by the State pursuant to the contract between it and appellant and specifically states appellee will enter in on any part of the line where the right-of-way has been acquired and there proceed. This clause of the contract is not to be construed to require appellee to do the work piecemeal on disconnected parts of the right-of-way. Where the language of a contract will admit, it should be presumed that the parties meant only what was reasonable. In our opinion the charge correctly stated the law.

The court instructed the jury that if appellee had established by a fair preponderence of the evidence, appellant's misrepresentation as to its title to the right-of-way or the existence of the oral contract, or either of them, that appellee was entitled to recover all proximate damages so established. It then instructed the jury that appellee contended that because of the issuance of the injunctions it was hindered and delayed in the performance of its contract to such an extent that the cost of operations during the delay period was so far in excess of its earnings that it had sustained an actual loss of $313,522.09. It then stated that this loss was determined as follows and shown by appellee's exhibit 50:

| | | |
|---|---|---|
| Supplies and material | | $114,025.00 |
| Labor | | 118,993.43 |
| Overhead | | 47,090.89 |
| Cost of keeping equipment on job during delay period | | 190,385.02 |
| Total | | $470,395.24 |
| Credits | | |
| Earned during period | $142,568.46 | |
| Retrievable items | 14,304.69 | $156,873.15 |
| Actual loss claimed | | $313,522.09 |

Appellant insists that improper elements of damages were allowed to be considered by the jury and that the damages allowed were speculative and excessive.

■ In calculating damages to a contractor, when without his fault the other party, during the progress of the work, delays it, the object is to indemnify him for the losses sustained and gains prevented by the action of the party at fault, viewing these elements in relation to each other. The profits and losses must be determined according to the circumstances of the case and the subject matter of the contract.

■ The measure of damages for delay in the performance of a construction contract is the actual loss sustained by reason thereof and the burden rests on the contractor to show by a fair preponderance of the evidence the actual or proximate amount. If this cannot be done with a reasonable degree of certainty, damages cannot be recovered. United States v. Behan, 110 U.S. 338, 343, 4 S.Ct. 81, 28 L. Ed. 168; Wisconsin Bridge & Iron Company v. Alpena, 238 Mich. 164, 213 N.W. 93, 51 A.L.R. 1209.

Appellee undertook to establish, as an item of damage, the cost of keeping its equipment on the job during the disputed delay period. The value of the equipment as of May 1, 1928, was determined to be $722,852.21 by an appraisal of the American Appraisal Company based on reproduction cost and sound value. Appellee then undertook to apply to this valuation a schedule of cost for keeping equipment on the premises promulgated by the Associated General Contractors of America. This schedule is used as a guide by contractors for the determination under every condition of the average cost of maintaining and operating the equipment generally used by them, and develops the theory that a given percentage of a contractor's capital investment will be his costs arrived at by averaging depreciation, interest on investment, major repairs and overhead, storage, incidentals and equipment overhead, insurance and taxes. The figures are computed on a basis of the equipment being used on a 10-hour day, and the schedule is prepared on the theory that it will provide a sum which will repay the contractor his costs plus depreciation and obsolescence in order to return the capital invested at the time the equipment must be scrapped.

838

It was applied in the case here as follows: The reproduction cost of each item of equipment on the project as shown by the appraisal was ascertained and the reference number in the contractor's schedule found, and for each item of equipment, the rates for depreciation, overhauling, major repairs, interest, taxes, storage, insurance and the average use months per year as shown by the schedule in arriving at the annual rate; then reduced to days and the number of days of the delay period, multiplied by the daily rate.

Appellant assigns error to the use of this schedule by the jury in determining damages and insists that if it be competent evidence and applied to appellee's estimate of cost at the time it bid, it would show a minimum cost of completing the contract of $665,337.92 in which event appellee would have sustained a loss of $68,000 instead of a gain of $99,047, regardless of the delay.

■ Subject to the rule that damages for the breach of a contract must have been within the reasonable contemplation of the parties and capable of ascertainment with a fair degree of certainty, the purpose is always to make good the loss to the injured party and when equipment is shown to have a definite rental, and opportunity of obtaining it is lost by another's breach of contract as in the case here, the rental value for the time usually affords a fair basis for the ascertainment and award of damages. Brown v. East Carolina Railroad Company, 154 N.C. 300, 70 S.E. 625; Strobel Steel Construction Co. v. Sanitary District of Chicago, 160 Ill.App. 554; Clarke Const. Co., et al. v. United States, 7 Cir., 290 F. 192.

■■ Determination of damages for breach of a contract is an inexact science and the sum reached by whatever method used will never be more than an approximation. This impossibility of precise determination is generally recognized and the law does not require mathematical certainty. Recognizing the evidential difficulties inherent in fixing damages to inflexible monetary terms, the law adjusts itself to the exigencies of the business world. In the case here, we are driven to ask the opinions of those having superior knowledge of rental value of machinery and equipment. It is difficult to lay down any exact rule with reference to the amount

of knowledge a witness must possess before giving his opinion as to rental value and a determination of the question rests largely in the discretion of the trial judge. Montana Railway Company v. Warren, 137 U.S. 348, 354, 11 S.Ct. 96, 34 L.Ed. 681.

The use of the A. G. C. schedule in computing appellee's damages for delay was suggested by appellant's chief engineer at the request of the Michigan State Highway Department.

■ Opinions as to rental value are not to be either rejected or accepted arbitrarily but to be weighed with all other evidence in accordance with the demonstrated qualities of each witness to form an opinion. Head v. Hargrave, 105 U.S. 45, 51, 26 L.Ed. 1028; The Conqueror, 166 U.S. 110, 131, 17 S.Ct. 510, 41 L.Ed. 937.

■ The questioned evidence here is not so indefinite or uncertain as to require its rejection and the results, opinions and estimates are not without basis in fact and do not lead to obviously improbable results. It was to be weighed by the jury along with other supporting and collateral evidence. The questioned schedule was in general use by contractors in determining the cost of maintenance of equipment during the progress of work long prior to the execution of the present contract and the evidence shows that contractors in the vicinity of Detroit, Michigan, made use of it in the conduct of their business. It was a custom of the trade and presumably the parties here contemplated its use in the determination of rights growing out of their relationship if the cost of keeping machinery and equipment on the job arose.

■ The customs of trades which are in evidence may be used to annex incidents to all contracts in matters with respect to which they are silent.

The court in its charge pointed out the contentions of appellant as to the weakness of the schedule and directed the jury that it would give due weight to all of its imperfections and could reject it if, in their opinion, it had no evidential value. In our opinion, appellant's assignment on this point is without merit.

Appellee claimed $47,090.89 as overhead expenses in its schedule of losses which was submitted to the jury. Appellant insists that this item was not a proper element to be considered in measuring dam-

ages. Salaries of appellee's executive officers made up approximately one-half of the item, and there was included in it $8,500 for entertainment of prospective customers, $2,541.95 for maintaining a storage yard at Chillicothe, Ohio, $8,536.93 for traveling expenses and $5,605.05 under the heading "sundries."

In computing damages for breach of a construction contract, overhead expenses may be considered. These are not definable with precision but may be said to include broadly the continuous expenses of the business, irrespective of the outlay on a particular contract. McCloskey v. United States, 66 Ct.Cl. 105; State of Indiana v. Feigle, 204 Ind. 438, 178 N. E. 435. The jury was not required to view appellee's loss as totally separate and apart from its general work. When the present delay resulted, a part of the general expense of appellee's business was incurred in the supervision of the employees and the maintenance of the machinery and equipment on the job here in question and also to the injunction suits which produced the delay.

The propriety and business necessity of the itemized charges in the account were sharply disputed and under the charge of the court, the jury were instructed to allocate to this job only a fair and reasonable amount of appellee's overhead, considering the supervision required and the proportionate amount of time and attention given.

Overhead was one of the consequential expenses which the parties must have had in mind when the contract was entered into. This issue was submitted to the jury under a proper instruction. Appellant does not dispute the charge for material and supplies and labor.

Appellee claimed that due to the delay caused by the injunctions it was compelled to overhaul 53,546,400 cubic yards of earth excavated from zone 3 of the right-of-way and deposit it in zone 1 instead of zone 3 at an increased cost of one-half a cent per cubic yard, or $267,832 over that anticipated at the time of its bid. The court submitted this item to the jury substantially as follows:

That the appellee claimed it was compelled to haul large quantities of excavated material greater distances than called for under the contract and defined the term overhaul as the excess distance over that specified in the contract, which appellee claimed was due to the tie-up of the right-of-way because of the injunctions. The court stated that after the injunctions were lifted it was undisputed that appellee was ordered by appellant to haul 240,000 cubic yards from zone 1 to zone 3 Fill and 10,000 cubic yards from zone 1 to zone 2.

It charged that appellant claimed that the overhaul was necessitated by appellee placing this amount of dirt in zone 1 for its own convenience and that appellee's vice president and superintendent advised appellant's officials at the inception of the work that it desired to haul dirt from zone 3 Barrow into zone 1 and agreed later to haul a corresponding amount from zone 1 to zone 3 Fill, but that this was denied by appellee.

That appellants claimed that there was an underhaul which should have been subtracted from the overhaul if recovery was allowed which appellee denied. It charged the jury to take into consideration the quality of the material at Trowbridge Cut, zone 1, the subject of the overhaul, whether desirable for backfills, ballast, surfacing and other purposes in connection with railroad construction work and whether there was room in zone 1 to have kept the material within it or any other circumstance that rendered the claims of either appellant or appellee more probable. He charged that if it found the facts as claimed by appellee established by a preponderance of the evidence, that in arriving at a just and reasonable rate of computation it should take into consideration appellee's claim for one-half cent per cubic yard and the fact that appellant had paid appellee for overhaul from zone 2 into zone 3 at the rate of ³⁄₁₀ths cent per cubic yard, at which rate the amount claimed would be $155,232 instead of $267,832.

The court charged the jury that if it gave a verdict for the plaintiff that it would find a total amount and not separate it into the various items of damages claimed by appellee. Appellant attacks the item of overhaul on the following grounds:

(1) That the original contract prohibited payment for changes in or additions to the work resulting in increased costs, unless the contractor and appellant's chief engineer agreed thereto in writing; (2) That the increased cost of overhaul was not directly or proximately caused by appellant's

alleged fraud and was not within the terms of the alleged oral contract; (3) That the overhaul was not caused by the delay; (4) If so caused, appellee's remedy was for a breach of the contract by change of the specifications; (5) That there is no substantial evidence that appellee incurred any additional expense by reason of overhaul; (6) That the amount allowed by the jury on this account was excessive. The evidence most favorable to appellee on this item is substantially as follows:

The original contract provided that excavated material from zones 1 and 2 should be deposited within those zones. When the injunctions disrupted the doing of the work according to the plans and specifications, appellant directed appellee to deposit the excavated material from zone 3 Barrow into zone 1 instead of the Fill in zone 3 Barrow as originally planned.

In the early spring of 1930, appellant's chief engineer ordered appellee to haul zone 1 material across zone lines into zone 3 Fill and zone 2. In March, 1930, appellee's managing officers refused to make these overhauls because of the additional cost and on March 8 of that year, appellant's chief engineer complained that the work was not progressing satisfactorily and appellee would have to put into operation a standard gauge excavating and transportation plant and when appellee's president objected, appellant's chief engineer threatened to cancel the contract; thereupon appellant loaned appellee sufficient funds to put in the necessary standard gauge plant. The operation of this equipment required the hauling of excavated material from zone 1 to zone 3. The overhaul was finished in November, 1930, and appellee made a demand on appellant for payment submitting a detailed statement. After the entire contract was completed on August 12, 1932, appellee again presented its claim to appellant's chief engineer for the overhaul and in the contract of settlement of November 30, 1932, its claim for overhaul was excluded, and on that date, appellant's chief engineer advised appellee by letter that, without conceding the validity or correctness of the claims, that all the claims, including overhaul, were properly chargeable to the delays occasioned by the injunctions.

Appellee insists from this evidence that appellant is estopped to now claim that the increased cost due to overhaul was not within appellee's claim for damages due to delay.

In our opinion the rule applies that where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot change his ground and put his conduct on another and different consideration after litigation has begun. He is not permitted thus to mend his hold, but is estopped from doing it by settled principles of law. Smith v. German Insurance Company, 107 Mich. 270, 65 N.W. 236, 30 L.R.A. 368; Ohio & M. Railway Company v. McCarthy, 96 U. S. 258, 268, 24 L.Ed. 693; Letta v. Cincinnati Iron & Steel Company, 6 Cir., 285 F. 707. This doctrine is especially applicable in the present case when, but for the representations of appellant, appellee might have sued it in assumpsit. Appellant urges that the rule has no application, because appellee had no claim or cause of action for increased cost due to overhaul and that it could not have been misled or injured by appellant's conduct whether good or bad, and further that·it did not act on the representations to its prejudice. This contention must be rejected. But for appellant's representation, appellee might have brought its claim for overhaul within the principle that where a contractor can justify his refusal to proceed'with the contract because he is confronted with circumstances not contemplated when made, which render its performance impossible or unduly onerous, and the promissor induces him to proceed by a promise of additional compensation the promise may be enforced. Dermott v. Jones, 2 Wall. 1, 69 U.S. 1, 9, 17 L.Ed. 762; Scanlon v. Northwood, supra.

Appellant was estopped from contesting appellee's overhaul claim on the ground that it was not a delay claim. At the trial and throughout, appellant contended there was no overhaul and having adopted that theory and tried the case on it, it cannot now contend that appellee's cause of action should have been for a breach of the contract or that it was not proximately caused by appellant's alleged fraud or not within the terms of the oral contract, or that it was not a delay claim.

There is substantial evidence that the overhaul was measured according to the custom of the trade and equaled the cubic yards of soil claimed to have been hauled by appellee and also that the sum

claimed was reasonable for such work in the community where performed. There was conflicting evidence as to whether there was in fact any overhaul and whether it should be computed upon a mileage, rather than cubic yard, basis and as to whether the charge was reasonable, but these issues were properly left to the jury.

On June 24, 1929, the parties hereto entered into a supplemental contract, providing for the construction of additional yard trackage in which appellee agreed to forego all claims for damages arising from delay subsequent to June 24, 1929. Appellant tendered this contract insisting that it barred appellee's claim for overhaul and the court rejected it on the ground that while appellee's claim was measured by work done after June 24, 1929, it arose prior to that date. This ruling was correct.

The court charged the jury that if it found for the appellee, it would "add five per cent on every element of loss from the time it was incurred, and the schedule will give you the time it was incurred, one shovel in 1928 and one in 1929 but the schedule will give it whatever is recovered they are entitled to five per cent on that recovery."

We think this charge was erroneous and error cannot be corrected in the judgment.

The schedule to which the court referred and made a part of its charge was a summation of appellee's damages determined by it and stated in the alternative. In each, appellee assumed that its damages due to delay which ended June 24, 1929, were in the sum of $313,522.09 and in both alternatives, it claimed interest at five per cent on that sum for the period from June 24, 1929, to May 24, 1939, and showed interest due of $155,454.68. In the item of overhaul, which was completed November 24, 1930, one alternative was to use a rate of ½ cent per cubic yard station which showed $267,832 due November 24, 1930, and interest was claimed on that sum at the rate of five per cent from that date to May 24, 1939, aggregating $133,828.60. In the other alternative a rate of ³⁄₁₀ cent per cubic yard was used which showed $155,232 due November 24, 1930, and interest was claimed on that sum at the rate of 5 per cent from that date to May 24, 1939, aggregating $65,975.60. It will thus be seen that in one alternative interest charge of $269,283.28 was claimed and in the other $121,430.28.

The court directed the jury to use the schedule in determining interest. The jury awarded a gross sum of $871,000. It must be assumed that the award included a large item of interest as the court's instruction was peremptory on that point.

The precise question is whether, under the laws of Michigan, appellee was entitled as a matter of right to interest on the award. Erie Railroad Company v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The Michigan cases on the subject involve some confusion and uncertainty but while the tendency of the courts of that State is to extend the right to recover interest on demand far beyond the limits to which the right was originally confined (Taylor v. Railway Company, 101 Mich. 140, 59 N.W. 447) and in cases where the damage is complete and the amount of the loss fixed as of a particular time, interest will not be withheld merely because the damages are unliquidated, yet, in cases of tort or on contract where both the right of recovery and the amount of damages are alike uncertain until a verdict is had, interest is not allowable as a matter of right until the damages become fixed. Coburn v. Muskegon Booming Company, 72 Mich. 134, 40 N.W. 198; Nelson v. Stewart, 174 Mich. 127, 140 N.W. 544; McGuire v. Galligan, 53 Mich. 453, 19 N.W. 142; Hettler Lumber Company v. Olds, 6 Cir., 242 F. 456.

Under the facts here, interest was not demandable of right, but was a question for the jury to decide under appropriate instructions. Lucas v. Wattles, 49 Mich. 380, 13 N.W. 782.

In our opinion, it could not be determined as a matter of law that appellee's claims for overhaul or damages due to delay were either fixed or liquidated for a definite and certain amount on any date prior to determination by the jury. While it is clear that the delay period of which appellee complains ended June 24, 1929, and the overhaul for which it claims was completed November 24, 1930, the legal liability of appellant for each item was in doubt and the amount due on each item was uncertain and undetermined.

▇ The rule prevails in Michigan that when necessary in order to arrive at fair compensation, the court or jury in the exercise of a sound discretion, may include interest or its equivalent as an element of damages, but interest is not to be separated from the damages allowed by the jury. The jury or the trier of the facts should fix all elements entering into the amount awarded. The court in the present case had no more authority to peremptorily direct the jury to award interest than it had under the evidence in the case to peremptorily instruct it to find the other elements of damages. The question of interest allowable was for the jury.

▇ Concluding as we do, that a contracting party claiming to have been defrauded may not continue in the performance of a contract or enter into a new agreement in relation to its subject matter without waiving the fraud, the court on retrial will instruct the jury that if it finds from a fair preponderance of the evidence that the parties hereto entered into the oral contract relied upon, it will find nothing for the appellee on the fraud count of its declaration. Simon v. Goodyear Metallic Rubber Shoe Co., 6 Cir., 105 F. 573, 52 L. R.A. 745; Van Scherpe v. Ulberg, supra.

Judgment reversed and cause remanded for a new trial consistent with this opinion.