ROGERS, Circuit Judge,
dissenting in part.
I respectfully dissent from Part I of the majority opinion. Ford should not be required to pay twice for the finished parts, when its arrangement served only to increase the likelihood that HSA could continue in business and pay off its debt to GMAC-BC. Such a holding can only serve to discourage bona fide purchasers of goods from dealing with bankrupt companies that are trying continue operations.
In my view, there is evidence that the PO delivery term was modified or waived by Ford with respect to the $1,034,351.65 in finished goods. On the day Debtor ceased operations, it notified Ford of the cessation and permitted Ford to begin removing the finished goods. Ford’s failure to remove all of the finished goods on that date was due to insufficient truck capacity. Under these circumstances, a genuine issue of material fact exists as to whether the delivery term was modified or waived, and whether a sale therefore occurred.
The majority concludes that Ford and Debtor could not have modified the delivery term because the agreement approved by the bankruptcy court requires any waiver, alteration, modification, or amendment of the agreement to be done in writing, and that agreement incorporates the Ford purchase orders. This argument was neither raised below nor argued on appeal. For at least two reasons, it is unpersuasive.
First, it is questionable whether the agreement actually requires that any modification of the Ford purchase orders be in writing. The agreement approved by the bankruptcy court simply recognizes that “[plursuant to various purchase orders and/or supply contracts issued by Ford ... Debtor is obligated to manufacture certain parts for Ford.... ” J.A. at 206. The agreement specifically provides that it does not replace but merely supplements the Ford purchase orders. J.A. at 219. While the agreement provides that its terms take precedence over any conflicting terms in the purchase orders, there is no apparent conflict between the requirement that modifications to the complex financing agreement be in writing and the absence of a similar requirement for routine purchase orders.
Second, even if the agreement by its terms required that any modification be in writing, an agreement that modifications to a contract must be made in writing does not preclude the parties from orally modifying the contract, unless the modification falls within the statute of frauds.[1] Although parties may enter into contracts which require alterations to be in writing, that requirement may later be eliminated by agreement. In a case applying Michigan law, this court has explained that
*411 [i]t is unnecessary that [] a change or modification of the contract be in writing, even though the original contain an express provision that no change or modification thereof can be made except by writing. A written contract is of no higher dignity than an oral one except under the statute of frauds, and there can be no more force in an agreement in writing not to agree by parol than in a parol one not to agree in writing and every such agreement is ended by the new one which contradicts it.
Grand Trunk Western R. Co. v. H.W. Nelson Co., 116 F.2d 823, 831 (6th Cir.1941).
In this case, a genuine issue of material fact exists as to whether the delivery term in the purchase order was modified or waived, such that the finished goods were sold.[2] In view of the majority’s contrary resolution of this issue, it is unnecessary for me to treat the remaining issues of whether the sale was authorized (as the bankruptcy court held) or in the alternative whether the sale was in the “ordinary course of business” (as Ford urges). In any event, because the district court did not reach those issues, the better course might well be to permit the district court to resolve those issues in the first instance, were we to reverse the district court’s determination that there was no sale of the finished goods.
For the foregoing reasons, I respectfully dissent.

. No argument has been made, either below or on appeal, that modification of the purchase orders was subject to the statute of frauds. The statute of frauds appears to be inapplicable for several reasons. First, the statute of frauds is an affirmative defense which is usually waived if not raised as a defense in the pleadings. TCP Indus., Inc. v. Uniroyal, Inc., 661 F.2d 542, 547 (6th Cir.1981); Fed.R.Civ.P. 8(c). GMAC-BC not only failed to raise the statute of frauds as an affirmative defense in its answer, see J.A. at 130-33, but it has never argued that the modification was ineffective because it did not conform to the requirements of the statute of frauds. Second, the statute of frauds does not apply to contracts for specially manufactured goods. See Mich. Comp. Laws § 440.2201(3)(a) (2000). The goods manufactured by Debtor for Ford appear to fall within this exception. Third, the statute of frauds does not apply where the goods have been received and accepted. Mich. Comp. Laws § 440.220 l(3)(c) (2000). If Ford did, as it contends, take delivery of the goods at Debtor's plant, then the statute of frauds would be inapplicable.

. Although the majority also suggests that Debtor may have lacked authority to modify the delivery term, neither it nor GMAC-BC cites any authority for the suggestion that the modification of the purchase order terms required the approval of the bankruptcy court. The delivery term, as noted above, was not part of the agreement approved by the bankruptcy court on April 21, 2000. The effect of the alleged modification was to excuse Debtor from its obligation of loading the goods onto a carrier’s truck. That modification is fundamentally different from a debtor’s assumption of an executory contract or a debtor's waiver of an affirmative defense (the circumstances in the cases cited by the majority), both of which, in contrast, result in significant consequences for the bankrupt’s estate.