Application of Leo W. RAINARD
and
Joseph Bancroft & Sons Co.

Misc. No. 10.

United States District Court
D. Delaware.

March 13, 1961.

Plaintiff Spunize Co. sued Duplan Corporation for infringement in the Middle District of North Carolina. Defendant is a licensee of Bancroft & Sons Co., a Delaware corporation. The yarns alleged to infringe in the North Carolina action are produced by defendant Duplan under a license agreement from Bancroft.

Bancroft has in the District Court in Connecticut a suit for a declaratory judgment of invalidity of the Spunize patent, and for noninfringement by the yarn produced and sold by Bancroft and its licensees. Spunize moved to dismiss the Connecticut action or to transfer or stay. Bancroft then sought an injunction against Spunize restraining the North Carolina action pending the Connecticut suit. The Spunize motion was denied and the Bancroft motion for injunction was granted by Judge Charles E. Clark.[1] On appeal the injunction pendente lite was reversed;[2] but, the denial of the motions to dismiss, transfer or stay were not affected. In fact, Judge Swann wrote (268 F.2d at page 525): "Both the North Carolina suit and the Connecticut suit should be allowed to proceed." Later, Spunize issued a subpoena from this Court (D.C.Del.) to Leo W. Rainard, an employee of Bancroft, to testify, by way of deposition, in the pending North Carolina action of Spunize v. Duplan.[3]

Rainard appeared and the deposition proceeded for two days. During the course of the deposition Bancroft's counsel objected to certain lines of inquiry. The deposition was continued pending the present motion before this Court for a protective order and to quash the subpoena.[4]

Robert H. Richards, Jr., Richards, Layton & Finger, Wilmington, Del., Byerly, Townsend, Watson & Churchill, C. Blake Townsend, Carroll G. Harper, New York City, of counsel, for Joseph Bancroft & Sons Co. and Leo W. Rainard.

Austin R. Miller and Henry N. Paul, Jr., Paul & Paul, Philadelphia, Pa., for Spunize Co. of America, Inc.

1. Sitting by designation as a District Judge, Judge Clark wrote: "So, notwithstanding defendant's contention to the contrary, it seems probable that plaintiff can escape the effect of any judgment rendered in North Carolina as to its licensee, Duplan. In any event, it is clear that it will take another and a separate lawsuit to ascertain its status as to the judgment. Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 2 Cir., 116 F.2d 845; Marshall Metal Products, Inc. v. Aghnides, D.C. S.D.N.Y., 126 F.Supp. 850; G. & C. Merriam Co. v. Saalfield, 241 U.S. 22, 27–33 [36 S.Ct. 477, 60 L.Ed. 868]."

2. Joseph Bancroft & Sons Co. v. Spunize Co. of America, 2 Cir., 268 F.2d 522.

3. The subpoena also calls for production of:
"(1) all agreements, correspondence, memoranda, warranties and other written documents in your possession, or in the possession of those over whom you have supervision and control, which in any way relate or refer, directly or indirectly, to any participation in or control of the defense of the above identified action by said Joseph Bancroft & Sons, Inc.,
"(2) copies of all published papers, articles or technical information authored in whole or in part by you and relating to the crimping of protinaceous of [sic] synthetic fibers or filaments,
"(3) all memoranda or other papers in the files of your company describing the nature of the crimp produced either in the crimping of 'Textralized' yarn or product by the apparatus and processes which form the basis of the license agreement between your company and The Duplan Corporation dated July 30, 1954 and modifications thereof."

4. Counsel for Bancroft suggested to counsel for Spunize on February 21, 1961: "that you promptly take discovery from Bancroft in the Connecticut case, where we are both parties and are both subject to the jurisdiction of the Court. In fact, we invite you now immediately to proceed in the Connecticut Court, which we regard as the only proper forum for trying and adjudicating this issue."

LEAHY, Senior District Judge.

1. Rainard, Bancroft's employee, was questioned on deposition on the degree of control Bancroft had over the North Carolina litigation. Spunize's counsel, at oral argument, stated, if answered, Rainard's testimony could be used in the North Carolina suit as admissions against Duplan. But only, I think, is this so if it has first been established that Bancroft is in control of the North Carolina litigation.

The nature or degree of Bancroft's control of the North Carolina litigation can be properly elicited from Duplan. If such information established privity between Bancroft and Duplan then Bancroft's activities could be admitted as admissions against Duplan. The fact that information concerning Bancroft's control of the litigation is requested initially from Bancroft rather than from Duplan does change the relevancy of the information. Judge Swann [5] wrote (268 F.2d at page 524): "Bancroft itself does not make and sell yarns, *nor it is in privity with its licensees* in the same sense as is a manufacturer with its customers." True, the Second Circuit's de-

termination of this matter has no binding effect on the North Carolina Court because, for one reason it may be suggested, its opinion was based only upon an examination of the license agreement, not upon any consideration of actual control exercised by Bancroft over the North Carolina suit. But, Bancroft has up to now decided it will not enter the North Carolina litigation. Judge Clark's opinion in the Connecticut litigation is, as a procedural matter, correct. If Bancroft stays out of the North Carolina suit it would not be bound by that Court's judgment. The fact Bancroft has elected to submit its rights to the Connecticut Court may not be weighed lightly in recognizing latitude to Spunize to utilize discovery techniques in its North Carolina suit of Spunize v. Duplan.

2. Examination by Spunize of a Bancroft employee and the discovery of documents is, argues Bancroft, an attempt to embroil it against its will in the North Carolina litigation—Spunize vis-a-vis Duplan; or, Spunize desires to "learn the facts" by discovery within the frame of the North Carolina litigation while Bancroft suggests the facts may be learned in the Connecticut action; [6] e. g., the

---

5. See note 2, supra.

6. Bancroft counsel by letter (2/21/61) to Spunize counsel:

"Moreover, if the question is to be raised,—and you have indicated that you have every intention of raising it,—we suggest that it be done only in the proper forum, that is, in the Connecticut case, to which we are both parties and in which you are entitled to make complete discovery from us to the extent permitted under the Rules. That you have not raised the question in Connecticut, but instead have attempted to obtain from our personnel, under the guise of depositions in the Duplan case, the information which you seek, we can only regard as an unwarranted attempt to embroil Bancroft, against its will, in the North Carolina action against Duplan.

"Bancroft is neither present nor represented in the North Carolina action. It cannot cross-examine your witnesses, and cannot call or cross-examine witnesses in its own behalf, in the North Carolina Court, without running the risk of sub-

jecting itself to the jurisdiction of that Court, which it has no intention of doing. Nor do we see how we could submit Bancroft to the jurisdiction of the North Carolina court for the limited purpose of trying out and determining the question which you have raised,—whether or not Bancroft should be bound by the judgment in the North Carolina case,—without running the risk of submitting Bancroft to the jurisdiction of that Court on the merits, which we have no intention of doing. We feel very strongly that the only proper forum for litigating the issue as to the effect of the North Carolina judgment is the Connecticut Court.

"If we wish to pursue the matter further, we suggest as a possible means of expediting a trial of the question, at least insofar as it can be tried at this stage, that you promptly take discovery from Bancroft in the Connecticut case, where we are both parties and both subject to the jurisdiction of the Court. *In fact, we invite you now immediately to proceed in the Connecticut Court, which we regard as the only proper*

fact that Bancroft is the real party controlling and directing the defense of the North Carolina action. In short, it is Bancroft's position that Spunize is attempting to circumvent Judge Clark's decision and the ruling of the Court of Appeals that both the Connecticut and North Carolina litigations should proceed independently of one another, and that, as to any res judicata lurking in the North Carolina litigation resting on an estoppel by Bancroft's alleged actual control of the litigation there, it will take a separate law suit (query: the Connecticut litigation itself) to ascertain Bancroft's status as to any North Carolina judgment to be entered in that forum. The reference for support is early (1916) Merriam v. Saalfield, 241 U.S. 22, 28–29, 36 S.Ct. 477 and recently reaffirmed as "familiar law" in Schnell v. Eckrich & Sons, Inc., 81 S.Ct. 557.

It is this law Judge Clark took when he decided the motions, supra, Bancroft v. Spunize, for he wrote:

"So, notwithstanding defendant's contention to the contrary, it seems probable that plaintiff can escape the effect of any judgment rendered in North Carolina as to its licensee, Duplan. In any event, it is clear that it will take another and a separate lawsuit to ascertain its status as to the judgment. Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc., 2 Cir., 116 F.2d 835; Marshall Metal

Products Inc. v. Aghnides, D.C.S.D. N.Y., 126 F.Supp. 850; G. & C. Merriam Co. v. Saalfield, 241 U.S. 22, 27–33 [36 S.Ct. 477].

3. Bancroft is not present in the North Carolina case. It cannot examine or cross-examine witnesses upon the issue of its alleged participation and control, or any other issue for any purpose, unless it submits itself to the jurisdiction of the North Carolina Court. At another time and place there should be a full-dress trial of the issue of Bancroft's control of the North Carolina litigation if there ever arises an attempt to encompass Bancroft in an ultimate North Carolina decree and an effort is made to enforce such a decree and judgment against Bancroft on a basis of res judicata or estoppel, etc.

I cannot conclude Spunize should be permitted to use the subpoena process of this Court to make Bancroft submit to the North Carolina litigation, i. e., in effect, submit to the jurisdiction of the North Carolina Court by the subpoena process to establish the fact it controls the North Carolina litigation. This would clearly circumvent the "familiar law" of the Merriam and Schnell cases, and escape the law of the case in the Connecticut suit, between Bancroft and Spunize, as fixed by Judge Clark and Judge Swann.

Order to quash the subpoena of the present Court will be entered.

---

*forum for trying and adjudicating this issue. Moreover, since a great deal of the information which you apparently seek is privileged, in our view, we repeat our offer to sit down with you and make a sincere attempt to stipulate so much of the relevant facts, —as seem to be unobjectionable,—of course without waiving any privilege*

*which we claim."* (Emphasis supplied.)
And, response of Spunize counsel to Bancroft counsel (2/27/61):
" * * * we think we are entitled to learn the facts and let the [North Carolina?] Court decide whether Bancroft's actions have or have not resulted in binding Bancroft under the decision in the North Carolina case."